# In re Salvador MORALES, Applicant

File A29 690 912 - El Paso

*Decided December 7, 1995*
*Decided September 11, 1996*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Where an alien in exclusion or deportation proceedings requests administrative closure pursuant to the settlement agreement set forth in *American Baptist Churches et al. v. Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991) ("ABC agreement"), the function of the Executive Office for Immigration Review ("EOIR") is restricted to the inquiries required under paragraph 19 of the agreement, i.e., (1) whether an alien is a class member, (2) whether he has been convicted of an aggravated felony, and (3) whether he poses one of the three safety concerns enumerated in paragraph 17.

(2) If a class member requesting administrative closure under the ABC agreement has not been convicted of an aggravated felony and does not fall within one of the three listed categories of public safety concerns under paragraph 17 of the agreement, EOIR must administratively close the matter to afford the alien the opportunity to pursue his rights in a special proceeding before the Immigration and Naturalization Service.

(3) If the applicant is subsequently found ineligible for the benefits of the ABC agreement in the nonadversarial proceeding before the asylum officer, or if he is denied asylum after a full de novo hearing, the Service may reinstitute exclusion or deportation proceedings by filing a motion with the Immigration Judge to recalendar the case, and such motion need only show, through evidence of an asylum officer's decision in the matter, that the class member's rights under paragraph 2 of the agreement have been exercised.

(4) Neither the Board of Immigration Appeals nor the Immigration Judges will review the Service's eligibility determinations under paragraph 2 of the ABC agreement.

(5) An interlocutory appeal will ordinarily be considered moot upon the alien's departure under an order of exclusion and deportation, but such an appeal need not be considered moot in each and every circumstance, particularly where the order of exclusion was erroneous and the issue raised has continuing importance to the proper administration of the immigration laws. *Matter of Okoh*, 20 I&N Dec. 864 (BIA 1994), distinguished.

FOR APPLICANT: Michael S. Gallagher, Esquire, El Paso, Texas

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Lee Abbott, General Attorney

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEILMAN, VILLAGELIU, COLE, MATHON, and GUENDELSBERGER, Board Members.

Concurring Opinion: ROSENBERG, Board Member.  Concurring and Dissenting Opinion: HOLMES, Board Member.

SCHMIDT, Chairman:

In a memorandum dated January 16, 1995, an Immigration Judge found that the applicant was properly placed in exclusion proceedings.  She denied his motion to administratively close the matter pursuant to the settlement agreement set forth in *American Baptist Churches v. Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991) ("ABC agreement"). The applicant filed this interlocutory appeal.  The interlocutory appeal will be sustained and the proceedings will be administratively closed.

## I.  BACKGROUND

The facts are not in dispute.  The applicant is a male alien who claims to be a native and citizen of El Salvador.  He originally entered the United States in December 1989.  On December 3, 1991, he registered to become a member of the class of aliens entitled to certain rights under the ABC settlement agreement, pursuant to which he received work authorization.  In early 1994, the applicant left the United States, allegedly to attend to family matters in Honduras. He sought reentry on or about December 23, 1994. At that time, he was apprehended and alleged to be excludable, both as an alien without valid entry documents and as an alien who sought entry through fraud.

The applicant appeared before an Immigration Judge. Through counsel, the applicant moved that the proceedings be administratively closed pending adjudication of an application for asylum before an asylum officer of the Immigration and Naturalization Service pursuant to the ABC settlement agreement. He presented two unpublished, nonprecedent decisions of this Board in support of his motion.[1]  These decisions interpreted the ABC agreement to require administrative closure under circumstances similar to those presented here. The Service opposed the motion.

The Immigration Judge denied the applicant's motion to administratively close the case. She found that the applicant was not "present" in the United States so as to become eligible for benefits under the agreement. The applicant filed this interlocutory appeal.

## II.  INTERLOCUTORY CONSIDERATION

We do not ordinarily consider interlocutory appeals. However, we have, on occasion, ruled on the merits of such appeals where we deemed it necessary to address important jurisdictional questions regarding the administration of the immigration laws or to correct recurring problems in the handling

---

[1] The prior cases were *Matter of Pena-Menjivar*, A70 436 348 (BIA December 20, 1991), and *Matter of Bradley*, A72 433 931 (BIA May 18, 1994).

of cases before the Immigration Judges. *See Matter of Guevara*, 20 I&N Dec. 238 (BIA 1990, 1991), and cases cited therein.

In the instant case, the applicant's interlocutory appeal raises important issues regarding the proper administration of the ABC settlement agreement. The resolution of these issues is necessary to clarify the respective roles of the Service and the Immigration Judges in implementing the agreement. Consequently, we will consider the interlocutory appeal.

## III. THE ABC AGREEMENT

The ABC litigation arose out of systemic challenges by certain Salvadorans and Guatemalans in the United States to the processing of asylum claims filed under section 208(a) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a) (1988). *American Baptist Churches v. Thornburgh, supra*, at 799. The settlement agreement contemplates a special procedure under which alien class members are entitled, under certain specified conditions, to new proceedings before the Service to determine their right to asylum or any other rights and benefits established under the agreement. It is therefore ameliorative in nature. Thus, it is important in interpreting the agreement to assure that all persons covered receive the procedural rights and benefits before the Service to which the agreement entitles them.

The agreement provides that those class members who are in exclusion or deportation proceedings, and who do not pose any specified public safety concerns, may have their cases administratively closed pending the exercise of their rights before an asylum officer of the Service. The sections of the ABC agreement relevant to this appeal are in paragraphs 1, 2, 17, and 19. They are set forth in pertinent part as follows.

Paragraph 1 of the agreement defines class members as:

    a.  all Salvadorans in the United States as of September 19, 1990; and

    b.  all Guatemalans in the United States as of October 1, 1990.

*American Baptist Churches v. Thornburgh, supra*, at 799.

Paragraph 2, entitled "CLASS MEMBERS ELIGIBLE FOR DE NOVO ASYLUM ADJUDICATION," sets forth a special asylum process before the Service for class members and describes a subset of class members who are eligible for a de novo asylum adjudication. These include certain Salvadoran and Guatemalan class members who:

indicate to the INS their intent in writing to apply for a de novo asylum adjudication before an Asylum Officer, or otherwise receive the benefits of this agreement, within [a specified period].

*Id.* at 799-800. Paragraph 2 adds the following proviso relative to the eligibility of the above class members for benefits under the agreement:

However, Salvadoran and Guatemalan class members who were interviewed by an Asylum Officer regarding their asylum applications between October 1, 1990, and November 23,

1990, will not be entitled to obtain a new asylum interview or a new initial Asylum Officer adjudication but will be entitled to all other rights and benefits they would otherwise receive under this agreement . . . . Class members apprehended at time of entry after the date of preliminary approval of this agreement shall not be eligible for the benefits hereunder.

*Id*. at 800.

Paragraph 17 of the agreement, entitled "DETENTION OF CLASS MEMBERS ELIGIBLE FOR RELIEF," sets forth conditions under which the Service can detain class members as follows:

The INS may only detain class members, eligible for relief under paragraph 2, who are otherwise subject to detention under current law *and* who: 1) have been convicted of a crime involving moral turpitude for which the sentence actually imposed exceeded a term of imprisonment in excess of six months; or 2) pose a national security risk; or 3) pose a threat to public safety.

*Id*. at 804 (emphasis added).

Paragraph 19 of the agreement provides for administrative closure of proceedings before an Immigration Judge or this Board pending a new asylum adjudication under specified conditions. It states, in relevant part, that "any class member" in proceedings commenced after November 30, 1990, who has not yet exercised his rights under the agreement

may ask the Immigration Court or the [Board of Immigration Appeals] to administratively close his or her case and the case will be administratively closed unless the class member has been convicted of an aggravated felony or is subject to detention under paragraph 17.

*Id*. at 805.

## IV.  THE ISSUE PRESENTED

The applicant invokes Paragraph 19 of the ABC settlement agreement to claim his right to administrative closure. He argues: (1) that such closure entitles him to a further proceeding before the Service under paragraph 2 of the agreement, and (2) that any further determinations regarding his eligibility for benefits under the agreement must be made by the Service in that separate proceeding.

The Service argues, on the other hand, that before the Board can decide if administrative closure is appropriate under paragraph 19, we must address a number of substantive questions under paragraph 2, which determines an alien's eligibility for a new asylum adjudication. The Service further contends that under paragraph 2, the applicant is not "eligible for the benefits" of the agreement, including administrative closure, because he was "apprehended at time of entry."

The ultimate question before us is whether the Service or the Executive Office for Immigration Review ("EOIR")[2] has the responsibility for making

---

[2] The Executive Office for Immigration Review, which includes the Immigration Judges and the Board of Immigration Appeals, is an agency separate and distinct from the Immigration and Naturalization Service.  8 C.F.R. § 3.0 (1995).

substantive determinations regarding an alien's eligibility under the ABC agreement.

## V. ANALYSIS

### A. Interpretation of the Terms of the Settlement Agreement

The substance of the ABC agreement is addressed to the Service and to certain applicants for asylum before the Service. The agreement also appropriately assigns to the Service and EOIR different roles in the implementation of its terms. These roles are set forth in separate paragraphs. In interpreting the role of EOIR in the administration of the ABC agreement, we look first to paragraph 19 since this is the sole paragraph which specifies any role for the Immigration Judges and the Board.

Paragraph 19 of the agreement provides for administrative closure upon request to "any class member" who has not been convicted of an aggravated felony and who poses none of the specified public safety concerns contained in paragraph 17. Thus, the Immigration Judges or the Board must first determine whether the alien requesting administrative closure is a class member under paragraph 1 of the agreement.

The mandate of paragraph 19 that "any class member" may request administrative closure clearly precludes EOIR from imposing on an alien determined to be a class member any eligibility restrictions beyond those specifically stated in that paragraph. Therefore, if a class member has not been convicted of an aggravated felony and does not fall within one of the three listed categories of public safety concerns under paragraph 17, EOIR must administratively close the matter to afford the alien the opportunity to pursue his rights in a special proceeding before the Service.

The agreement does not call upon EOIR to make any further substantive determinations regarding an alien's eligibility, which, under paragraph 2, are to be made by the Service. Thus, the limited role assigned to EOIR, that of assuring that each qualified alien class member has an opportunity for an eligibility determination by an asylum officer, is essentially procedural and tangential. Accordingly, we conclude we have no authority to interfere in the special, ameliorative procedure set forth in the agreement by making the substantive determinations required of the Service under paragraph 2.[3]

---

[3] While we agree with the dissenting opinion that the language of the ABC agreement itself is determinative, we believe the dissent's emphasis on the language of paragraph 2 begs the broader question: Who is to interpret that language? As we indicate herein, we find that the language and structure of the agreement indicate that paragraph 2 is addressed to the Service and not to EOIR.

## B.  Policy Considerations

We also find significant policy reasons for concluding that the role of EOIR in administering the ABC agreement should be minimal. In our view, the process of adjudication will be more orderly if the function of EOIR is restricted to the inquiries required under paragraph 19, i.e., whether an alien is a class member, whether he has been convicted of an aggravated felony, and whether he poses one of the safety concerns enumerated in paragraph 17. Involving EOIR in issues of substantive eligibility under paragraph 2 of the agreement would only further complicate its already cumbersome process and invite additional legal challenges to the procedure.

For example, issues could arise regarding the timeliness of a filing for the de novo asylum adjudication, the possible disqualification of an alien from further consideration on the basis of a previous asylum interview, and the interpretation of such terms in paragraph 2 as "all other rights and benefits they would otherwise receive" under the agreement. Adjudication of these issues could lead to multiple avenues of further appeal, thus creating a potential morass of additional litigation instead of providing settlement.

By contrast, under our interpretation of the agreement, it is clear who is entitled to a proceeding before the asylum officer. Once the asylum officer determines eligibility for benefits under the agreement and/or eligibility for asylum, the requirements of the agreement are satisfied and administrative litigation of the issues then comes to an end.

## C.  Application of the Agreement

The applicant's registration for class membership in accordance with paragraph 1 is undisputed. The Service has not shown that he has been convicted of an aggravated felony or that he falls within one of the enumerated categories of aliens who are a public safety concern under paragraph 17. Consequently, the exclusion proceedings in this case must be administratively closed.

Of course, if the applicant is found ineligible for the benefits of the ABC agreement in the nonadversarial proceeding before the asylum officer, or if he is denied asylum after a full de novo hearing, the Service may reinstitute proceedings by filing a motion with the Immigration Judge to recalendar the case. Such motion need only show, through evidence of an asylum officer's decision in the matter, that the class member's rights under paragraph 2 of the agreement have been exercised. At that point, the Government's responsibilities under the agreement with respect to the particular alien are completed and the proceedings may continue in accordance with the usual requirements of the Immigration and Nationality Act. Neither the Board nor the Immigration Judges will review the Service's eligibility determinations under paragraph 2.

## VI. AUTHORITY AND POLICY ARGUMENTS

In its brief in opposition to the appeal, the Service advances several additional arguments. First, the Service contends that our prior unpublished decisions, and the applicant's arguments on appeal, are erroneous or unsound for policy reasons. The Service also asserts that, in any case, the applicant has lost his class membership and is therefore ineligible for administrative closure. Finally, the Service argues in the alternative, and somewhat incongruously, that we have no authority to pass upon the issue presented.

### A. Propriety of the Board's Policy

The Service first argues that as a matter of policy, its interpretation of the ABC agreement must be accepted to avoid a serious enforcement problem that could not have been intended under the agreement. It is alleged that under our interpretation, the Service will be unable to control the borders pursuant to its mandate, because innumerable aliens could enter the country with impunity and avoid detention and exclusion or deportation proceedings simply by invoking the ABC agreement.

This argument is unfounded. As we noted above, before an alien is entitled to administrative closure under paragraph 19 of the agreement, he must establish that he is a "class member." That is, he must show that he is within the finite class of persons who registered for ABC benefits, at a time certain, under paragraph 1 of the agreement. Failing this, the normal enforcement procedures, as well as adjudication in exclusion or deportation proceedings, will continue without interruption. *See, e.g., Arreaza-Cruz v. INS*, 39 F.3d 909 (9th Cir. 1994) (holding that an alien's deportation was legally executed after he failed to file for class membership under the ABC agreement).

As the applicant points out, this Board has already issued two unpublished decisions on the issue of the ABC settlement agreement, reaching essentially the same conclusion as we reach here. The Service has not challenged these decisions for 3 1/2 years. Presumably, therefore, these decisions have posed no unmanageable administrative difficulties.

We note that cases of imposters or individuals who pose a public safety or security risk are adequately dealt with under paragraph 19 of the agreement. In other cases, the Service itself has the power to expedite "paragraph 2" determinations whenever necessary to minimize any administrative difficulties associated with enforcement.

Finally, if, in the judgment of the Service, the ABC agreement has been misinterpreted, the appropriate remedy is to petition the district court with jurisdiction over the agreement for a modification or clarification. *See American Baptist Churches v. Thornburgh, supra*, at 809-10 (providing specifically for retention of jurisdiction in case of repudiation of the agreement by any party). The Service has not done this. Consequently, we are not

persuaded that our interpretation of the ABC agreement represents improper policy.

## B. Applicant's Class Membership Following Departure

The Service argues further, however, that even if our reasoning in this regard is correct, it does not apply here because the applicant left the United States without permission and has not been readmitted.

We find no basis in the ABC agreement for the proposition that a class member loses his class membership upon departing from and returning to the United States. A close reading of the language of paragraph 19 renders untenable the proposition that it applies only in deportation proceedings and not in exclusion proceedings. Further, while a class member's ultimate eligibility for the full benefits of the ABC agreement may vary, there is simply no provision for the lapse of class membership itself, at least under the circumstances presented here. Consequently, until such time as a determination is made by an asylum officer as to this applicant's eligibility for benefits under the agreement, administrative closure is appropriate.

## C. Challenges to Board Authority

Finally, as noted above, the Service offers two challenges to our authority to pass on the issue presented. First, the Service argues that under our own precedent decisions, administrative closure may not be granted where one of the parties has not agreed to such closure. *See Matter of Lopez-Barrios,* 20 I&N Dec. 203 (BIA 1990). As the agreement makes clear, however, the Service officially and formally agreed to administrative closure whenever called for under the ABC settlement agreement. *American Baptist Churches v. Thornburgh, supra*, at 799 ("[T]his agreement imposes binding obligations on the parties . . . ."). The Service's argument in this regard is therefore altogether unfounded.

Next, the Service argues that this Board is without authority or subject matter jurisdiction to rule upon this matter at all and may not issue binding decisions directing the Service to adhere to the Board's interpretation of the agreement. This argument is erroneous in three fundamental respects.

First, this Board has jurisdiction over appeals from the decisions of Immigration Judges generally, pursuant to regulations, and we must exercise such authority, conferred by law upon the Attorney General, as is necessary and appropriate to the disposition of the cases before us. 8 C.F.R. §§ 3.1(a)(1), (d) (1995).

Second, nothing in the ABC agreement alters this jurisdictional structure, notwithstanding the Service's argument that the ABC agreement "impliedly" vests all review in the courts. On the contrary, paragraph 19 of the agreement states explicitly that under specified circumstances, when an alien requests of

this Board that the proceedings be administratively closed, such request will be granted.

Third, decisions of this Board are binding on all officers and employees of the Service in the administration of the Immigration and Nationality Act. 8 C.F.R. §§ 2.1, 3.0, 3.1(g) (1995); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (discussing the duty of the Board to exercise its own independent judgment where the Attorney General has, by regulation, delegated this responsibility to the Board). Thus, our disposition of this matter is proper under both the applicable regulations and the ABC agreement.

## VII.  CONCLUSION

Since the applicant is an ABC class member, has not been convicted of an aggravated felony, and does not pose any of the public safety concerns set forth in paragraph 17 of the ABC settlement agreement, he is entitled to administrative closure.  Therefore, his interlocutory appeal will be sustained.

**ORDER:**      The interlocutory appeal is sustained.

**FURTHER ORDER:**      The record is remanded to the Immigration Judge with instructions to administratively close the exclusion proceedings pending the outcome of proceedings before an asylum officer under the terms of the ABC agreement.

Board Members Gerald S. Hurwitz and Lauri S. Filppu did not participate in the decision in this case.

*CONCURRING OPINION:*  Lory D. Rosenberg, Board Member

I respectfully concur.

At issue is whether a class member is entitled to have his exclusion hearing administratively closed pending his pursuit of benefits under the settlement agreement in *American Baptist Churches v. Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991) ("ABC agreement").  I agree with the majority that the substance of the ABC settlement agreement is addressed to the Immigration and Naturalization Service and certain applicants for asylum before the Service. The majority concludes that the ultimate question is whether the Executive Office for Immigration Review ("EOIR") has authority to make substantive determinations under the ABC settlement agreement, in the first instance, and answers that question:  No.  Board Member Holmes, concurring and dissenting in part, differs; he finds that the express language of the agreement in paragraphs 2, 17, and 19 controls and authorizes us to determine whether the circumstances in which the applicant here finds himself—having been apprehended upon his return to the United States from an emergency departure to attend to an ill parent and charged with being inadmissible—renders him ineligible for ABC benefits.

I agree with Board Member Holmes that the express language of the agreement controls, but I concur with the result reached by the majority, because I take issue with the reliance of both the majority and Board Member Holmes on not only paragraphs 1 and 19, but paragraphs 2 and 17. Rather, I find that the language relevant to the instant determination dictates a process which compels the conclusion that class membership alone is determinative of the right to obtain administrative closing of EOIR proceedings.

The ABC settlement agreement, which contains 42 paragraphs, is designed to ameliorate systemic defects in the prior processing of Salvadoran and Guatemalan asylum claims by providing a fresh opportunity for most class members to present their applications under sections 208 and 243(h) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158, 1253(h) (1994), for protection from persecution in their homelands.[1] The agreement defines those who qualify as such class members according to the date of an individual's first presence "in the United States." For a Salvadoran individual that date is September 19, 1990; for a Guatemalan individual that date is October 1, 1990. ABC agreement paragraph 1.

Additional ABC agreement paragraphs are referred to in the appeal before us, including paragraphs 2, 17, and 19. The language of paragraph 19, which provides for the administrative closing of cases upon the request of a class member, is plain.[2] Paragraphs 2 and 17 are more tangentially related to the precise issue before us. They relate respectively to treatment of certain class members with respect to new adjudications and detention.[3]

In the case before us, the applicant seeks administrative closing of these proceedings under paragraph 19 of the ABC settlement agreement. He is Salvadoran by nationality and he has not been convicted of an aggravated felony. There is no dispute that he has established class membership by virtue of an entry in 1989 (which occurred prior to September 19, 1990, the closing date set by the agreement) or that he was previously present in the United States until 1994. He is presently in exclusion proceedings and subject to the

---

[1] A range of benefits is provided, from interim employment authorization to procedural protections, such as administrative closure and release from Service custody, to de novo asylum interviews.

[2] Paragraph 19 refers to class members who are entitled to a stay of deportation or "whose proceeding was commenced after November 30, 1990 . . . [who] may ask the Immigration Court or the BIA to administratively close his or her case and the case will be administratively closed unless the class member has been convicted of an aggravated felony or is subject to detention under paragraph 17."

[3] Specifically, the paragraphs refer to those class members who "if they have not been convicted of an aggravated felony . . . will be afforded a de novo, unappealable asylum adjudication before an asylum officer" (paragraph 2); and who are eligible for relief under paragraph 2 who may be detained (paragraph 17).

Service's detention based upon its claim that his departure and return to the United States was meaningful and broke the continuity of his presence, causing him to have effected an "entry" which would extinguish his eligibility for paragraph 2 benefits. Whether or not that is the case remains to be determined.[4]

My position is simple. The ABC agreement is straightforward and its language is clear on its face. While we need not reach the intent behind the agreement to determine the issue before us, the intent also is clear: it is intended to provide Salvadoran and Guatemalan class members a de novo opportunity to apply, to be interviewed, and to be considered fairly for political asylum by a Service asylum officer.[5] That includes precluding detention and the prosecution of charges before EOIR until such time as a class member has had an opportunity to be considered by the asylum officer. In particular, the agreement provides that one who is a class member may, if an EOIR proceeding is pending or commenced after November 30, 1990, request and have that case closed administratively. The operation of this provision is limited only in two instances—where the class member has been convicted of an aggravated felony or is subject to detention under paragraph 17, which in turn references paragraph 2.

Paragraph 2 contains, at the end, two limitations on eligibility for de novo benefits—one is for those who were interviewed by an asylum officer between October 1, 1990, and October 23, 1990, as contemplated by the agreement, and one is for those who were apprehended at entry after the ABC settlement agreement's preliminary approval.[6] I conclude that these are

---

[4] Indeed, once this applicant presents himself to a Service asylum officer ("AO") for a determination of eligibility under paragraph 2, a number of developments may occur. The AO may find that there was no meaningful break in presence so that the applicant was not "apprehended at entry" after the date of approval of the ABC agreement and therefore is not a class member divested of eligibility. The AO may find that the applicant did make an entry and, as a result of the Service's apprehension, was "apprehended at entry," notwithstanding that he already had established class membership. The parties may dispute and resolve the issues among themselves, or may seek clarification from the federal court over the meaning of the last clause of paragraph 2 with regard to those persons who are apprehended at the time of entry into the United States after the settlement approval date. Or, the AO may determine that this class member cannot establish eligibility for de novo hearing benefits. Should that be the case, this matter would come before the Immigration Judge and then would be ripe for an independent determination regarding whether exclusion or deportation proceedings are the proper forum in which to proceed.

[5] Indeed, in a January 11, 1991, memorandum to EOIR personnel, former Chief Immigration Judge Robie emphasized that "[s]ome members of the class are entitled to a *de novo* asylum adjudication before an INS asylum officer pursuant to the asylum regulations that became effective on October 1, 1990" and "[w]e have purposely been over rather than under inclusive in our decisions to administratively close matters in order to assure the broadest opportunity to TPS and ABC eligible individuals."

[6] The afterthought clause of paragraph 2, referenced above, does not specify the reasons that the parties choose to include it, and I will not speculate either concerning the objectives underlying it or its intended scope. Nevertheless, I do take note of the terminology of the clause

conditions subsequent to class membership and therefore not relevant to our action in administratively closing the case before us.

The language of the agreement is explicit. Paragraph 19, by its terms, is tied only to paragraph 1. For purposes of determining whether or not administrative closure is available here, it is class membership under paragraph 1, and not ultimate eligibility for de novo benefits under paragraph 2, which controls. Paragraph 2's final clause extinguishing eligibility for the benefits of class membership is a condition subsequent and is not determinative of class membership. One need not be fully qualified for the ultimate benefit in order to warrant treatment under the terms and conditions of the settlement agreement. I thus concur that the applicant is entitled to such administrative closure on request under the ABC agreement. This reading of the agreement does not divest us of authority to determine whether or not an entry has been made, a task we may well face once an asylum officer reviews eligibility under paragraph 2.[7] But we may not address that issue in determining the applicant's entitlement to administrative closure, just as we may not address other eligibility issues, before it is determined according to the provisions of the agreement.

*CONCURRING AND DISSENTING OPINION:* David B. Holmes, Board Member

I respectfully concur in part and dissent in part.

### I.

The facts in this case would not appear to be in dispute. The applicant is a native and citizen of El Salvador who initially entered the United States in December 1989. He was included within the class of aliens entitled to certain rights under the provisions of the stipulated settlement agreement in

---

which refers to entry "after the date of *preliminary approval*" rather than generically to all apprehensions at entry. (Emphasis added.) In so doing I am struck by the apparent effort to discourage entries by putative class members who may have been in the United States on or before September 19, 1990, but who had left and might have considered returning later upon learning of preliminary approval of the agreement.

[7] I reject the argument made arguendo by the Service that we have no authority to pass upon the issue presented—whether or not administrative closing of this case pursuant to paragraph 19 is proper. It is explicit in the terms of the agreement for us to review such cases as may come before us to determine whether or not they should proceed or must be closed administratively according to the settlement agreement. Nevertheless, I disagree with the position taken by the dissent that either we or the Immigration Judge have jurisdiction and are called upon by the agreement to make determinations concerning the collateral effects of class membership or eligibility for other substantive benefits under the agreement. In my view, the agreement does not contemplate EOIR's resolving substantive disputes concerning ABC class member status or entitlement to class member benefits except in only the most peripheral and jurisdictional way.

*American Baptist Churches v. Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991) ("ABC agreement").[1] He registered as a class member under the ABC agreement and received work authorization.

The applicant left the United States in February 1994 and traveled to Honduras after receiving word that his mother was "quite ill and needed medicine." He departed without advance permission to return. On or about December 23, 1994, he arrived at the port of entry in El Paso, Texas, and made a false claim to United States citizenship in an unsuccessful attempt to gain entry into the United States. He was denied entry and detained.

In accordance with the provisions of section 235(b) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b) (1994), exclusion proceedings were commenced before an Immigration Judge for further inquiry regarding the applicant's admissibility. The decision of the Immigration Judge reflects that the applicant admitted that he made a false claim to United States citizenship but argued that he was admissible based on his previous grant of work authorization. The Immigration Judge ultimately found the applicant excludable under sections 212(a)(6)(C)(i) and (7)(A)(i)(I) of the Act, 8 U.S.C. §§ 1182(a)(6)(C)(i) and (7)(A)(i)(I) (1994), based on his admissions and the documentary evidence of record. The exclusion proceedings were continued to provide the applicant the opportunity to apply for asylum and withholding of deportation before the Immigration Judge. Through counsel, however, the applicant argued that he was entitled under the terms of the ABC agreement to have the exclusion proceedings administratively closed so that his application for asylum could be adjudicated by an Immigration and Naturalization Service asylum officer. The Service opposed the motion. The motion was denied by the Immigration Judge. This interlocutory appeal followed.

## II.

I initially note that I concur with the majority opinion insofar as it rejects the argument by the Service that the Immigration Judge and the Board lack subject matter jurisdiction to interpret and enforce "any" of the provisions of the ABC agreement. The settlement agreement creates issues regarding the administrative closure of cases that must be resolved during the course of exclusion or deportation proceedings. As a party to these proceedings, the Service cannot dictate to an Immigration Judge or the Board how contested provisions of the ABC agreement that are determinative of issues raised in exclusion or deportation proceedings must be interpreted.

---

[1] The ABC stipulated settlement agreement is set forth in its entirety as an appendix to the district court decision in *American Baptist Churches v. Thornburgh, supra*. Accordingly, it will not be appended here. However, the rather abstract discussion of the issues in this case may be somewhat easier to follow if this decision and the majority's are read in conjunction with the complete settlement agreement.

I also agree with the majority that the Board's decision in *Matter of Lopez-Barrios,* 20 I&N Dec. 203 (BIA 1990) (holding that "the administrative closing procedure should not be used if it is opposed by either party"), is not determinative here. The issue before us is whether the Service stipulated in the ABC agreement to the administrative closure of cases such as this. If the Service did so stipulate, it has consented to the administrative closure of this case.

However, as I agree with the Immigration Judge that administrative closure of this case is not mandated by the terms of the ABC agreement, I dissent from the majority's contrary conclusion.

## III.

The issue of whether the applicant is entitled to administrative closure and a de novo asylum adjudication before a Service asylum officer is controlled by the provisions of the ABC agreement itself. Although I say so with a certain hesitancy as I am alone in dissent on this point, the issue seems clearly resolved to me by the express language of the agreement.

The applicant is a member of the class described in paragraph 1 of the ABC agreement. Paragraph 2 of the agreement (entitled "Class Members Eligible for De Novo Asylum Adjudication") describes the class members eligible for a de novo, nonappealable asylum adjudication before a Service asylum officer. Paragraph 2 concludes with the sentence: "Class members apprehended at time of entry after the date of preliminary approval of this agreement *shall not be eligible for the benefits hereunder.*" (Emphasis added.) It is undisputed that the applicant was apprehended after the date of preliminary approval of the agreement while attempting to enter the United States. Consequently, I would conclude he is not eligible for benefits under the ABC agreement.

The majority focuses on language in paragraphs 17 and 19 of the ABC agreement. But I do not find that either of those paragraphs can be read to create benefits for which paragraph 2 specifically states the applicant is ineligible.

Paragraph 17 of the agreement is captioned "Detention of Class Members Eligible for Relief." The first sentence of this paragraph reads:

> The INS may only detain class members, *eligible for relief under paragraph 2*, who are otherwise subject to detention under current law and who: 1) have been convicted of a crime involving moral turpitude for which the sentence actually imposed exceeded a term of imprisonment in excess of six months; or 2) pose a national security risk; or 3) pose a threat to public safety. (Emphasis added.)

By its express terms, paragraph 17 only places limitations on the detention of certain class members "eligible for relief under paragraph 2." As this applicant is not eligible for relief under paragraph 2, paragraph 17 does not

preclude the Service from detaining him (i.e., he is subject to detention under paragraph 17).

Likewise, paragraph 19 of the agreement does not entitle this applicant to administrative closure of these exclusion proceedings. The language in paragraph 19 referenced by the majority reads:

> However, any class member whose deportation proceeding is based on a criminal ground of deportability or whose proceeding was commenced after November 30, 1990, will not have his or her case automatically administratively closed on or before January 31, 1991. Rather, that individual may ask the Immigration Court or the BIA to administratively close his or her case and the case will be administratively closed unless the class member has been convicted of an aggravated felony *or is subject to detention under paragraph 17*. (Emphasis added.)

In the instant case, the applicant's proceedings were commenced after November 30, 1990, and he *is* subject to detention under paragraph 17 because he is not "eligible for relief under paragraph 2." Thus, he is not entitled to administrative closure under paragraph 19.

I find no basis to conclude that any language in paragraph 17 or 19 of the ABC agreement renders the applicant eligible for benefits under the settlement agreement in the face of the clear language to the contrary in paragraph 2 of the agreement.

Further, I am not persuaded by the majority's view that an Immigration Judge or this Board cannot address the question whether the applicant was "apprehended at time of entry" because there is no express reference in paragraph 2 of the ABC agreement to Immigration Judges or the Board making such a determination. I note that there similarly is no reference in paragraph 17 to Immigration Judges or the Board making a determination whether a class member falls within the special detention rules of that paragraph. However, to make the determination of whether an applicant is entitled to administrative closure under paragraph 19, we are obliged to look to *both* paragraphs 2 and 17 because the latter paragraph specifically references eligibility for relief under the former. I am no more willing to have the Service dictate for purposes of "administrative closure" under paragraph 19 whether a class member was "apprehended at time of entry" for purposes of paragraph 2 than I would be to have the Service dictate whether a class member was subject to detention under paragraph 17 as "one convicted of a crime involving moral turpitude," if it were the Immigration Judge's or the Board's conclusion that the relevant crime did not involve moral turpitude.

## IV.

As a final matter, I note that the Service has argued in other cases involving the ABC agreement that the phrase "apprehended at time of entry" in paragraph 2 of the agreement has a broader meaning than "apprehended while attempting entry." Under the Service's apparent interpretation, a class

member who actually *entered* the United States could be construed to have been "apprehended at time of entry" for paragraph 2 purposes. It is not clear to me whether the argument is that a temporal or a distance test or a combination of the two would apply such a determination. In any event, I do not find merit in this position.

The term "entry" is well defined for immigration law purposes. *See* section 101(a)(13) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(13) (1994); *Matter of G-*, 20 I&N Dec. 764 (BIA 1993); *Matter of Z-*, 20 I&N Dec. 707 (BIA 1993); *Matter of Patel*, 20 I&N Dec. 368 (BIA 1991), and cases cited therein. I would give the terms used in the ABC agreement their commonly accepted meanings unless they were otherwise defined in the agreement. The relevant language in paragraph 2 was not drafted with precision. However, if the parties to the stipulation had intended the phrase "apprehended at time of entry" to have a different meaning than "apprehended while attempting entry," I have little doubt that it would have been separately defined in the agreement.[2] As it was not, I would find that the question whether a class member was "apprehended at time of entry" under paragraph 2 should be resolved under traditional "entry" analysis. If a class member has entered the United States, he or she would not be disqualified from the benefits of the agreement under paragraph 2. If a class member is apprehended while attempting entry after the date of preliminary approval of the agreement, then he or she would be disqualified from benefits under paragraph 2 and the exclusion proceedings should go forward under the usual provisions of the Act. *See* sections 235(b), 236 of the Act, 8 U.S.C. §§ 1225(b), 1226 (1994).

## V.

There is no dispute that the applicant in the instant case was apprehended while attempting to enter the United States after the date of preliminary approval of the ABC agreement. Accordingly, I would find that he is not eligible for benefits under the ABC agreement and would affirm the decision of the Immigration Judge denying the applicant's motion to administratively close the exclusion proceedings.

---

[2] If the phrase "apprehended at time of entry" was read in its most literal sense so as to apply to class members who had actually effected an entry, then it seemingly would not apply to class members apprehended while attempting to enter the United States because there would be no "time of entry" in such cases. If this phrase were so construed, only those class members who were apprehended *after* having made an entry, but *before* the undefined "time of entry" period had elapsed, would come within the scope of the last sentence in paragraph 2. Such an interpretation would be nonsensical.

## BEFORE THE BOARD
(September 11, 1996)

FOR APPLICANT: Michael S. Gallagher Sr., Esquire, El Paso, Texas

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: David M. Dixon, Chief Appellate Counsel

BEFORE: Board En Banc: SCHMIDT, Chairman; VACCA, HEILMAN, VILLAGELIU, COLE, ROSENBERG, MATHON, and GUENDELSBERGER, Board Members. Dissenting Opinions: HOLMES, Board Member; DUNNE, Vice Chairman

SCHMIDT, Chairman:

In a published decision dated December 7, 1995, we sustained the applicant's interlocutory appeal from an order of the Immigration Judge denying the applicant's motion for administrative closure. *Matter of Morales*, 21 I&N Dec. 130 (BIA 1995). We ordered the proceedings remanded with instructions for administrative closure pending the outcome of adjudication of the applicant's asylum application under the terms of the settlement agreement in *American Baptist Churches v. Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991) ("ABC settlement agreement"). The Immigration and Naturalization Service has filed a motion to reconsider. The motion will be denied.

A motion to reconsider "shall state the reasons upon which the motion is based and shall be supported by such precedent decisions as are pertinent." 8 C.F.R. § 3.8 (1996). In the instant matter, the Service first argues that the legal analysis in our decision of December 7, 1995, was flawed. The Service has restated its position with greater emphasis and clarity, but has offered no persuasive new arguments and no new case law to supplement the arguments we have already rejected after careful deliberation.

In particular, the Service persists in its argument that the Board's interpretation of the ABC settlement agreement will interfere with its parole, detention, and, hence, general enforcement authority. However, we specifically addressed and rejected this contention in our prior order, and we are not inclined to revisit the issue. *Matter of Morales, supra*, at 136-37. The Service also reiterates its argument that the Service, and not the Board, has the authority to determine who within the Service shall decide the issue of eligibility under paragraph 2 of the ABC settlement agreement. However, as we have already pointed out unanimously in our prior decision, we are bound by the terms of the ABC settlement agreement itself, and we are under an obligation to interpret those provisions of the agreement that require us to decide whether a case can proceed or must be administratively closed. *Matter of Morales, supra*, at 138-39, 143-44, 146 (Rosenberg, Board Member, concurring; Holmes, Board Member, concurring in part and dissenting in part). Consequently, we are not inclined to reconsider our decision in this matter on the basis of the Service's restatement of its position.

Second, the Service argues that since the applicant's hearing continued during the pendency of his interlocutory appeal, and since he was ordered excluded and deported, waived appeal, and was in fact excluded and deported prior to the issuance of our interlocutory order, the Board's decision on the interlocutory matter should be regarded as moot and should be vacated. The Service has not, however, cited any precedents or other authority in support of this argument.

We observe that on the rare occasions when interlocutory consideration is granted, this Board asserts jurisdiction because we deem it necessary to address important jurisdictional questions regarding administration of the immigration laws, or to correct recurring problems in the handling of cases before the Immigration Judges. *See Matter of Guevara*, 20 I&N Dec. 238, 239 (BIA 1990, 1991), and cases cited therein. In adjudicating the applicant's case, we asserted jurisdiction for these very reasons. The Service has not shown or even asserted why these reasons do not obtain, or why they should not be of concern due to the applicant's enforced departure predating our order.

We note that an application for admission is a continuing application and need not cease upon an applicant's departure under an erroneous order of exclusion while an appeal to the Board is pending. *See Matter of Keyte*, 20 I&N Dec. 158 (BIA 1990) (holding that departure after taking an appeal from the denial of admission does not constitute withdrawal of the appeal); *Matter of Wu*, 14 I&N Dec. 290 (R.C. 1973) (finding no withdrawal of application for admission where reentry permit was erroneously denied and applicant sought to test his admissibility as a returning resident); *cf. Matter of Okoh*, 20 I&N Dec. 864 (BIA 1994) (limiting *Matter of Keyte, supra*, to direct appeals, as distinguished from motions and appeals of motions); *Matter of Ching and Chen*, 19 I&N Dec. 203 (BIA 1984) (finding withdrawal of request for admission where applicants accepted the order of exclusion, filed no appeal, and entered surreptitiously). While an interlocutory appeal will indeed ordinarily be considered moot upon the alien's departure under an order of exclusion and deportation, it need not be so considered in each and every circumstance. *See, e.g., Matter of Mincheff*, 13 I&N Dec. 715, 721 n. 1 (BIA 1970, 1971) (finding that alien's departure following a final order of deportation issued by the Board, and his subsequent return and enlargement on parole, did not moot the admissibility issue upon Service's motion for reconsideration); *cf. Matter of Okoh, supra*. In this case, the applicant's interlocutory appeal had merit, properly asserted rights under the ABC settlement agreement, was at no time specifically withdrawn, and raised issues that are of continuing importance for the administration of the immigration laws. Consequently, we did not and do not now regard our interlocutory order as moot, but observe that our prior order effectively vacated the prior order of the Immigration Judge. We will deny the motion to reconsider.

**ORDER:**    The motion by the Immigration and Naturalization Service is denied.

Board Members Gerald S. Hurwitz and Lauri S. Filppu did not participate in the decision in this case.

*DISSENTING OPINION*: David B. Holmes, Board Member

I respectfully dissent.

I need not restate my reasons for dissenting in part from the majority's December 7, 1995, decision in this case. *See Matter of Morales,* 21 I&N Dec. 130 (BIA 1995). Wholly aside from that disagreement, however, I would grant the Immigration and Naturalization Service's unopposed motion to reconsider and would vacate as moot that decision of the Board.

Exclusion proceedings against the applicant commenced before the Immigration Judge in January 1995. On January 16, 1995, the Immigration Judge denied the applicant's motion to administratively close the proceedings pursuant to the settlement agreement set forth in *American Baptist Churches v. Thornburgh,* 760 F. Supp. 796 (N.D. Cal. 1991). Through counsel, the applicant filed an interlocutory appeal from that ruling of the Immigration Judge.

It is important to note at this point that the mere filing of an interlocutory appeal neither divests an Immigration Judge of jurisdiction over a case, nor results in an automatic stay of further proceedings. Jurisdiction remains with the Immigration Judge in such circumstances *unless* the Board asserts jurisdiction over the case. *See Matter of Ruiz-Campuzano*, 17 I&N Dec. 108 (BIA 1979); *Matter of Ku*, 15 I&N Dec. 712 (BIA 1976); *Matter of Sacco*, 15 I&N Dec. 109 (BIA 1974).[3]

In April 1995, the Immigration Judge properly proceeded with the exclusion proceedings because the Board had not asserted jurisdiction over the case and no stay of proceedings was in effect. In a decision dated April 13, 1995, the Immigration Judge found the applicant excludable under sections 212(a)(6)(C)(i) and (7)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. §§ 1182(a)(6)(C)(i) and (7)(A)(i)(I) (1994), and denied his applications for asylum and withholding of deportation.

The applicant, who was represented by counsel throughout these proceedings, had the right to appeal from the Immigration Judge's April 13, 1995, decision. *See* 8 C.F.R. §§ 3.1(b)(1), 3.38, 236.7 (1995). On direct appeal, he

---

[3] The Board has long opined that permitting "piecemeal review of interlocutory orders of an immigration judge at successive stages of a . . . proceeding before final decision would only open the door to obfuscation and delay." *Matter of Ruiz-Campuzano, supra*, at 109. On occasion, however, the Board has assumed jurisdiction over interlocutory appeals where it was deemed necessary to address important jurisdictional questions regarding the administration of the immigration laws, or to correct recurring problems in the handling of cases. *See Matter of Rahman,* 20 I&N Dec. 480 (BIA 1992); *Matter of Guevara*, 20 I&N Dec. 238 (BIA 1990, 1991), and cases cited therein.

could have sought Board review of any interlocutory rulings of the Immigration Judge and could have preserved his challenge to her decision not to administratively close the proceedings. *See Matter of Sacco, supra.* The filing of such an appeal would have stayed execution of the Immigration Judge's decision. *See* 8 C.F.R. § 3.6(a) (1995).

The applicant, however, did not appeal from this decision of the Immigration Judge. Instead, on April 14, 1995, through counsel, he filed a signed statement with the Immigration Court indicating that he waived his right to appeal the Immigration Judge's decision and that he desired to be deported. As a result, the April 14, 1995, decision of the Immigration Judge became final. *See* 8 C.F.R. §§ 3.39, 236.6 (1995). Pursuant to this final order, the Service excluded and deported the applicant by airplane to Honduras on April 28, 1995. This execution of the order of exclusion and deportation brought the exclusion proceedings to finality. *See Matter of Okoh,* 20 I&N Dec. 864, 865 (BIA 1994).

The Board should have been advised by the parties that the applicant had been excluded and deported and that the previously filed interlocutory appeal was moot. Neither party did so. This does not change the fact, however, that when the Board sought to assert "jurisdiction" over the applicant's interlocutory appeal on December 7, 1995, there no longer was any pending case over which jurisdiction could be asserted. The exclusion proceeding had been brought to finality by the execution of the applicant's order of exclusion and deportation. Under these facts, I would reconsider the Board's prior decision in this case and vacate that decision as moot.[4] If the issues addressed in that decision represent a recurring problem, another case over which the Board in fact has jurisdiction should exist or will arise in which these matters can be addressed.

*DISSENTING OPINION:* Mary Maguire Dunne, Vice Chairman

I concur in the foregoing dissent insofar as it would reconsider the Board's prior decision in this case and vacate that decision as moot.

---

[4] The case before us is clearly distinguishable from *Matter of Mincheff*, 13 I&N Dec. 715, 721 (BIA 1970, 1971). In *Matter of Mincheff*, which did not involve an interlocutory appeal, the Service had moved the Board to reconsider its decision dismissing a Service appeal from an order of an Immigration Judge admitting an applicant to the United States. In *Mincheff*, the Board had jurisdiction over the exclusion case at the time of its initial decision; the Board's initial decision had been *stayed* pending consideration of the Service's motion; and, when the applicant thereafter briefly departed the United States and was paroled on return, he had *not* been under an order of exclusion, final or otherwise.