NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3180
_____

LUCILA JACOBO,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                          Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A073-185-588
(U.S. Immigration Judge: Honorable Eugene Pugliese)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 10, 2011

Before:  SCIRICA, SMITH and JORDAN, *Circuit Judges*.

(File: January 26, 2012)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

     Lucila Jacobo is a citizen and native of Guatemala who was ordered deported in

1996. In 2008, she moved to reopen her removal proceedings in Newark, New Jersey,

contending her adjudication had been void of due process. The Immigration Judge denied

her motion and the Board of Immigration Appeals affirmed. Jacobo then requested reconsideration, asserting she is a protected class member under the settlement reached in *American Baptist Churches v. Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991) ("*ABC*"), and cannot be removed until given an opportunity to obtain her benefits. The BIA denied her motion. We will grant Jacobo's petition for review.

I.

The date of Jacobo's entry to the United States is a matter of dispute and to date, has not yet been determined by any finder of fact.[1] Nonetheless, all parties agree she entered on or before November 26, 1991. In August 1993, Jacobo applied for asylum with the former Immigration and Naturalization Service ("INS"), relating she had been persecuted and raped by anti-government guerillas in Guatemala. The INS rejected Jacobo's application and served her with an Order to Show Cause ("OSC") on June 13, 1996. The OSC was printed in English and Spanish, and it informed Jacobo that the United States believed she had entered the country without inspection and was subject to deportation. She was directed to appear before an Immigration Judge in Newark, New Jersey, on October 17, 1996. But Jacobo did not appear for her hearing. The IJ ordered her removable *in absentia* and Jacobo was mailed a final order of removal on October 23, 1996.

---

[1] As we discuss below, Jacobo's entry date is critical to her eligibility for benefits under *ABC*, as well as to her right to seek administrative closure in Immigration Court. The problem is, no finder of fact –neither the Immigration Judge in her initial hearing, nor the BIA at any subsequent stage of her case – has entered a finding as to her actual date of entry.

For the next twelve years, Jacobo remained in the United States. She married and had two daughters. On August 8, 2008, Jacobo filed a notice to reopen her deportation proceedings in Newark Immigration Court. She advanced three claims: the government's OSC had been "invalid and defective on its face" because it was not read to her in Spanish when served upon her; her *in absentia* deportation proceeding had been void of due process; and the IJ's removal order was invalid, making her eligible for relief under the Nicaraguan Adjustment and Central Relief Act ("NACARA").[2] Simultaneous with filing to reopen, Jacobo submitted an inquiry with the Asylum Office in Arlington, Virginia, to confirm she had timely applied for benefits under the settlement reached in *ABC*, 760 F. Supp. 796 (N.D. Cal. 1991). The Asylum Office sent Jacobo a document dated August 6, 2008, entitled "Registration Check," indicating she had "timely registered for ABC benefits."

The IJ denied Jacobo's motion to reopen in a one-page order, and she filed an appeal with the Board of Immigration Appeals ("BIA"). In her brief, Jacobo continued to contest the validity of the OSC and of her 1996 removal proceeding, but she now advanced an additional claim: according to the government's records, she was a class member under the *ABC* settlement who had timely applied for benefits. Thus, she contended she was entitled to obtain the benefits the *ABC* settlement provides – an opportunity to refresh her asylum application with the Asylum Office.

---

[2] The Nicaraguan Adjustment and Central Relief Act of 1997, Pub. L. No. 105-100, §203, 111 Stat. 2193, 2196-97 ("NACARA") created a cancellation of removal rule for class members of the *ABC* settlement, 760 F. Supp. 796 (N.D. Cal. 1991), who registered for benefits on or before December 31, 1991. *See* 8 C.F.R. § 1240.66.

On September 24, 2009, the BIA rejected Jacobo's appeal. It held her 1996 hearing had been statutorily and constitutionally sound, because neither the Immigration and Nationality Act nor due process doctrines require a person be given oral notice in her native language of a deportation hearing. With respect to her *ABC* argument, the BIA held that while Jacobo might be a class member and might be entitled to benefits, she "was afforded the opportunity to obtain relief from removal, but failed to appear for her scheduled immigration hearing."

Jacobo filed for reconsideration. She no longer contested the validity of the OSC or her 1996 removal proceeding. Instead, she submitted a new piece of evidence to bolster her *ABC* claim: an INS document dated July 14, 1997, entitled "ABC Eligibility Checklist – Pre-Interview File Review." In the document, an INS official concluded Jacobo had "first entered the United States on or before October 1, 1990," and so was a member of the *ABC* class. But, the INS also concluded it could not determine Jacobo's eligibility for *ABC* benefits, because there was no record she had applied for benefits on time. Jacobo argued this proved the INS failed, in 1996 or before, to properly identify her as an *ABC* beneficiary when reviewing her file. It sent her case to Immigration Court based on a mistake. Jacobo contended that under *In re Morales*, 21 I. & N. Dec. 130, 133 (BIA 1996) (en banc), she had a right to have her case administratively opened and closed so she could pursue the benefits to which she was entitled under *ABC*.

On June 22, 2010, the BIA denied Jacobo's motion to reconsider. It held any rights to administrative closure under *ABC* or *In re Morales* do not extend to *ABC* class

members who, like Jacobo, are subject to a final order of deportation. Jacobo moved for a stay, which was granted, and filed a petition for review.

## II. [3]

The issue before us is narrow: whether the BIA's decision to deny Jacobo reconsideration, based on its conclusion that her entitlement to administrative closure under *ABC* had been vitiated by the removal order from 1996, was legally correct. [4] We review for abuse of discretion, *Borges v. Gonzales*, 402 F.3d 398, 404 (3d Cir. 2005), finding an abuse only if the BIA's decision was "arbitrary, irrational, or contrary to law." *Id.* In undertaking such review, we revisit the BIA's legal conclusions de novo, affording "appropriate deference for the BIA's reasonable interpretation of statutes it is charged with administering." *De Leon-Ochoa v. Attorney Gen.*, 622 F.3d 341, 348 (3d Cir. 2010).

## III.

The litigation in *American Baptist Churches v. Thornburgh*, 760 F. Supp. 796

---

[3] The BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) & 1240.15. We have jurisdiction over final orders of removal pursuant to 8 U.S.C. § 1252(a)(1).

[4] Accordingly, many issues raised during earlier stages of this case are not before us. We do not review the IJ's decision to deny reopening or the BIA's affirming on appeal. Jacobo's petition for review was timely only to the BIA's denial of reconsideration. *See* 8 U.S.C. § 1252(b)(1) (providing that a "petition for review must be filed not later than 30 days" after a final order). Moreover, our review of the BIA's denial of reconsideration is limited solely to its conclusion that Jacobo was ineligible for administrative closure under *ABC*. Although the BIA denied reconsideration for additional reasons– e.g., it held Jacobo was no longer eligible for relief under NACARA because she would have had to request such in 1998—Jacobo's petition for review contested only the administrative closure determination. *See United States v. Rawlins*, 606 F.3d 73, 82 n.11 (3d Cir. 2010) (holding an appellant "waived [an] issue by failing to develop it in the argument section of his brief"); *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1065 (3d Cir. 1991) ("[A]bsent extraordinary circumstances, briefs must contain statements of all issues presented for appeal, together with supporting arguments and citations.").

(N.D. Cal. 1991), "arose out of systemic challenges by certain Salvadorans and Guatemalans in the United States to the processing of asylum claims." *In re Morales*, 21 I. & N. Dec. at 132. The settlement was intended to provide "additional review procedures" to asylees. *ABC*, 760 F. Supp. at 804. The settlement class was broadly defined as "Guatemalans in the United States as of October 1, 1990" and "Salvadorans in the United States as of September 19, 1990." *Id.* at 799 (Settlement ¶ 1). Class members who met additional requirements, set forth in paragraph 2, were granted a right to a de novo asylum adjudication. The paragraph 2 requirements were: (1) if Guatemalan, the class member had to "indicate to the INS in writing their intent to apply for a de novo asylum adjudication . . . within the period of time commencing July 1, 1991 and ending on December 31, 1991"; (2) the individual could not be convicted of an aggravated felony; and (3) the individual could not be "apprehended at time of entry after the date of preliminary approval of this agreement." *Id.* at 800 (Settlement ¶ 2(b)).

The de novo adjudications provided to *ABC* class members were designed to be procedurally robust. For instance, every adjudication was to include a new interview. *Id.* at 803 (Settlement ¶ 13). Every application was guaranteed a "preliminary assessment" by an asylum officer, and a second read by a supervisor. *Id.* at 804 (Settlement ¶¶ 15, 16).

Finally, the *ABC* settlement provided that "[e]ligible class members . . . will not be placed in [deportation] proceedings nor will proceedings be resumed before the[ir] adjudication is completed." *Id.* at 803 (Settlement ¶ 11). To ensure that IJs within the Executive Office of Immigration Review complied with this directive and afforded class members time to "effectuate [their] rights," paragraph 19 created an "administrative

6

closure" procedure. *Id.* at 805 (Settlement ¶ 19). Namely, "any class member whose deportation proceeding . . . was commenced after November 30, 1990 . . . may ask the Immigration Court or the BIA to administratively close his or her case and the case will be administratively closed[.]" *Id.* Thereafter, the class member could pursue his claim to *ABC* benefits with the former-INS. Only class members convicted of aggravated felonies or found to pose public safety risks were denied administrative closure.[5] *Id.*

In *Matter of Morales*, 21 I. & N. Dec. 130, 133 (BIA 1996), the BIA clarified the standards of review that apply when an individual claiming to be an *ABC* class member requests administrative closure in Immigration Court. The BIA held an IJ entertaining such a request should make two determinations: first, whether the movant qualifies as a "class member" under paragraph 1 of *ABC*, and second, whether the movant falls into one of the exceptions categories in paragraph 19 – e.g., has been convicted of an aggravated felony or is a public safety risk. *Morales*, 21 I. & N. Dec. at 135. If the individual clears such hurdles, the IJ should administratively close the case and allow the individual to pursue his claim to *ABC* benefits with the Asylum Office. *Id.* ("The agreement does not call upon EOIR to make any further substantive determinations regarding an alien's eligibility [to de novo asylum adjudications], which, under paragraph 2, are to be made by the Service.").

---

[5] Paragraph 19 further provided that for cases pending before the Attorney General under 8 C.F.R. § 3.1(h) (1990), "the review will not be stayed by virtue of this agreement and the class member's asylum claim before the Asylum Officer need not be adjudicated under this agreement until the Attorney General renders his decision." *Id.* at 806 (¶ 19(a)(2)). For cases pending in federal court, the government would "make a request that the proceeding be stayed pending an adjudication by an Asylum Officer." *Id.* (¶ 19(a)(3)).

IV.

In the present case, the BIA declined to grant Jacobo reconsideration because it held she was categorically ineligible for administrative closure. The BIA based this conclusion on one fact – that Jacobo was subject to a final order of removal entered in 1996. The BIA cited paragraph 21 of the *ABC* settlement, which provides "[n]othing in this agreement shall be construed to afford a right to further deportation or exclusion proceedings for those class members with a final order of deportation or exclusion." *ABC*, 760 F. Supp. at 807 (Settlement ¶ 21). Given Jacobo's removal order from 1996, the BIA concluded she "is not entitled to [administrative closure] pursuant to the *ABC* agreement." In turn, it found her motion to reopen lacked merit.

The problem with the BIA's decision is that it potentially deprives Jacobo of equitable relief to which she may be entitled. When filing her motion for reconsideration, Jacobo submitted new evidence suggesting the 1996 order of removal had been entered against her in error. Namely, she presented records demonstrating that although she was a member of the *ABC* class and had applied for *ABC* relief in a timely fashion, the INS lost track of her *ABC* claim when reviewing her underlying application for asylum. As explained *supra*, Jacobo attached to her motion for reconsideration an INS document entitled "ABC Eligibility Checklist," dated July 14, 1997. The document concluded Jacobo was "a member of the ABC class" because she was a Guatemalan who "first entered the United States on or before October 1, 1990." But it also stated "there is no evidence that the applicant directly registered for *ABC*" and the INS was therefore "[u]nable to determine *ABC* eligibility by file review." *Id*. Meanwhile, Jacobo had

8

previously submitted to the BIA – in her 2009 appeal of the IJ's denial of reopening – a record showing she did apply for *ABC* relief in a timely fashion. That document was the "Registration Check" form, sent to Jacobo by the Arlington Asylum Office on August 8, 2008. At the bottom, it stated Jacobo "timely registered for ABC benefits" according to the agency's records. Accordingly, Jacobo's newly submitted evidence suggests the INS submitted her case to the Immigration Court in 1996 based on an administrative error it committed at some point between August 1993 (when Jacobo applied for asylum) and June 1996 (when the INS delivered its OSC) . In turn, Jacobo was ordered removed before ever getting the opportunity to complete her application for *ABC* benefits.[6]

Had these events occurred as Jacobo alleges, she might be entitled to *nunc pro tunc* relief in the BIA or in this Court. *Nunc pro tunc* relief is "an equitable power to grant an order now as if it were granted sometime in the past." *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 910 (6th Cir. 2008).[7] The BIA has issued *nunc pro tunc* remedies "in cases going back for more than 50 years . . . [to] achieve equitable results serving the interests of the agency and the individual alike." *In re Lei*, 22 I. & N. Dec. 113, 132 (BIA 1998). Federal courts also "rel[y] on the doctrine, in order to return aliens to the position in which they would have been, but for a significant error in their

---

[6] That Jacobo could have appeared before the IJ and made these points at her 1996 hearing –i.e., that she was an *ABC* class member, who applied for relief in a timely manner, and should be granted administrative closure –is not dispositive. At issue is whether the INS committed an administrative error in the 1993-1996 period when it denied Jacobo's application for asylum and referred the case to Immigration Court. If the INS had committed such error, Jacobo should not be penalized for failing to request administrative closure in 1996.

[7] Black's Law Dictionary defines "*nunc pro tunc*" as "[h]aving retroactive legal effect through a court's inherent power." Black's Law Dictionary 1174 (9th ed. 2009).

immigration proceedings." *Edwards v. I.N.S.*, 393 F.3d 299, 308-09 (2d Cir. 2004). When "agency error would otherwise be irremediable, and where the plaintiff has been deprived of a significant benefit" such as "the opportunity to seek a particular form of deportation relief," courts apply the doctrine in immigration cases so "the error [can] be remedied *nunc pro tunc*." *Id.* at 310-311; *see also Batanic v. I.N.S.*, 12 F.3d 662, 667 (7th Cir. 1993) (granting a noncitizen asylum *nunc pro tunc*, when procedural defects in his removal proceeding coupled with an intervening statutory change made him otherwise ineligible for asylum); *De Cardenas v. Reno*, 278 F. Supp. 2d 284, 294 (D. Conn. 2003) (remanding a case to the BIA with directions to enter relief from deportation *nunc pro tunc*, given "administrative oversights and procedural defects [had] deprived [petitioner] of an important opportunity to make her case for section 212(c) relief").

Although *nunc pro tunc* remedies cannot be issued in violation of a statute, at issue here is whether an administrative error by the INS in the 1990s deprived Jacobo of a "significant benefit" to which she was entitled– namely, of the opportunity to file a de novo asylum application under *ABC*. *See Edwards*, 393 F.3d at 310. Whether administrative error in fact occurred is a factual question we leave to the factfinder. But the BIA's denial of reconsideration based on the 1996 removal order, made without any investigation of whether Jacobo was wrongfully deprived a benefit due to the government's error, would deprive Jacobo of potential equitable relief to which she could be entitled in the BIA and in this Court.

We also recognize Jacobo's entitlement to *nunc pro tunc* relief – as well as to *ABC* relief and to the right to seek administrative closure– turns on her date of entry. Had

Jacobo not entered before October 1, 1990, she would not be a "class member" under *ABC*, *see ABC*, 760 F. Supp. at 799 (defining the settlement class as "Guatemalans in the United States as of October 1, 1990"), nor would she be entitled to seek administrative closure in Immigration Court, to pursue her claim to *ABC* benefits with UCSIS, *see Morales*, 21 I. & N. Dec. at 130 (holding that when an individual requests administrative closure, the IJ should first determine whether the movant qualifies as a "class member" under paragraph 1 of *ABC*). In turn, were Jacobo ineligible for both *ABC* benefits and administrative closure, she would have no grounds upon which to request relief *nunc pro tunc*. But no trier of fact has yet made a finding as to Jacobo's entry date. The government contends she entered on November 26, 1991, citing her 1993 application for asylum. Jacobo contends she entered before October 1, 1990, citing a photograph of her allegedly taken in 1989 in New Jersey, as well as the INS's "ABC Eligibility Checklist" from July 14, 1997. She also claims her asylum application was not filled out in her handwriting and cannot be trusted. It would be improper for us to determine Jacobo's entry date in the first instance. *Konan v. Attorney Gen.*, 432 F.3d 497, 501 (3d Cir. 2005) (holding "a reviewing court is powerless to decide in the first instance issues that an agency does not reach"). But the fact that no adjudicatory body has made a determination about when Jacobo entered the country is insufficient at this juncture to foreclose her ability to seek equitable relief altogether.

V.

For the reasons stated above, we will grant the petition for review, vacate the Board's order, and remand for proceedings consistent with this opinion.