# United States Court of Appeals
## For the First Circuit

No. 03-1692

LUIS HUMBERTO ESTRADA-CANALES, et al.,

Petitioners,

v.

ALBERTO R. GONZALES,
Attorney General of the United States,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before
Lynch, Circuit Judge,
Bowman,* Senior Circuit Judge,
and Howard, Circuit Judge.

Roberto Gonzalez, with whom Audette, Bazar, Berren & Gonzalez, Inc. was on brief, for petitioners.
Jennifer L. Lightbody, Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom Peter D. Keisler, Assistant Attorney General, Civil Division, and Mark C. Walters, Assistant Director, were on brief, for respondent.

February 21, 2006

* Of the Eighth Circuit, sitting by designation.

**LYNCH**, **Circuit Judge**.  The lead petitioner in this immigration case is Luis Humberto Estrada-Canales ("Estrada"); the six others are his children.  The case involves aspects of the ABC Agreement, concerning special procedures for certain Salvadorans and Guatemalans who enter the United States.  See Am. Baptist Churches v. Thornburgh, 760 F. Supp. 796 (N.D. Cal. 1991).  It raises one legal issue about interpretation of 8 U.S.C. § 1155 (1994).

The petitioners are natives and citizens of Guatemala, who entered the United States illegally.  The Immigration Judge ordered them excluded and deported, deemed their applications for asylum and withholding of deportation abandoned, and determined that they were ineligible for waivers of inadmissibility and suspension of deportation.  The Board of Immigration Appeals denied petitioners' appeal from that decision.  This is a petition for review of that order of the BIA.

This case raises two sets of issues.  One set arises over the question of whether the petitioners are eligible for benefits under the ABC Agreement.  The government denies this court has jurisdiction over such claims.  We do not decide those jurisdictional issues.  Rather, we find petitioners have waived their claim by strategic decisions on their part.

As to the second set of issues, the usual petition for review claims (pertaining to petitioners' excludability as charged

and to asylum), the respondent agrees that this court has jurisdiction. We deny the petition for review. In doing so, we also uphold the interpretation by the BIA and the IJ of 8 U.S.C. § 1155 (1994) that aliens who present themselves at a point of entry in the United States based on visa petitions fraudulently obtained in circumstances such as these are inadmissible and not entitled to entry.

## I.

The basic facts of this case are not in dispute. Estrada first entered the United States without inspection in 1985. On October 9, 1985, Estrada became an employee of P&B Manufacturing ("P&B") in Rhode Island; he worked as a jewelry polisher. In 1989, P&B filed with the Department of Labor, on Estrada's behalf, an Application for Alien Employment Certification. Later, P&B also filed with the INS[1] a Petition for Prospective Immigrant Employee (Form I-140). This petition was approved on April 26, 1993. By then, in fact since August 9, 1991, Estrada had been laid off, but he did not notify the INS. After being laid off, Estrada did not work at P&B other than as a subcontractor.

---

[1] On March 1, 2003, the relevant functions of the INS were transferred to the Department of Homeland Security, and the INS subsequently ceased to exist. See Homeland Security Act of 2002, Pub. L. No. 107-296, § 471(a), 116 Stat. 2135, 2205 (codified at 6 U.S.C. § 291(a)). For the sake of simplicity, we use the term "INS" throughout the opinion.

Meanwhile, in July 1991, Estrada filed a form with the INS in order to register as a class member under the ABC Agreement. The ABC Agreement is a class action settlement agreement that was approved in American Baptist Churches, 760 F. Supp. 796. "The ABC litigation arose out of systemic challenges by certain Salvadorans and Guatemalans in the United States to the processing of asylum claims filed under . . . 8 U.S.C. § 1158(a)." Matter of Morales, 21 I. & N. Dec. 130, 132 (BIA 1996). The ABC agreement "contemplates a special procedure under which alien class members are entitled, under certain specified conditions, to new proceedings before the [INS] to determine their right to asylum or any other rights and benefits established under the agreement." Id. The ABC Agreement provides that during those special new proceedings, the pending case before the IJ is to be administratively closed. Id. at 134.

In March 1992, Estrada applied for asylum, listing his children on the application.[2]

In June 1995, Estrada went to Guatemala. He says his trip "was taken solely to bring his children" back to the United States, and that claim does not seem to be in dispute. Estrada went to the United States Consulate in Guatemala City to obtain his immigrant visa. There, he presented a forged letter, purportedly

---

[2] The asylum application lists only five children (Brenda, Beatriz, Lazaro, Luis, and Kimberly), omitting Silvia. The exclusion proceedings involved all six of Estrada's children.

-4-

from P&B, indicating that he continued to be employed full-time by P&B. Of course, Estrada had not been so employed since 1991. Unaware of the fraud, the consulate issued the visa on September 12, 1995, on the basis of an approved labor certification. Estrada and his children then attempted to enter the United States on October 1, 1995, but the INS detained them because the INS inspector could not find an approved labor certification among the documents. The INS paroled Estrada and his children into the United States for deferred inspection by the INS office in Providence, Rhode Island.

On October 24, 1995, an immigration inspector sent a letter to P&B, requesting, inter alia, information regarding Estrada's employment. A representative of P&B replied with a letter stating that the letter Estrada had presented to the consulate was a forgery, and that Estrada had not been employed by P&B since 1991. On November 8, 1995, P&B withdrew the Petition for Prospective Immigrant Employee (Form I-140) that it had previously filed on Estrada's behalf. A week later, on November 15, 1995, the INS placed the Estradas in exclusion proceedings.[3]

There was an initial hearing before an IJ on October 1, 1996. The INS alleged that the Estradas were excludable on two grounds: first, they lacked a valid labor certification, see 8

---

[3] Estrada was the lead applicant for relief. The IJ and the BIA, as well as the parties, have treated the claims of Estrada and his children collectively, focusing primarily on Estrada himself.

U.S.C. § 1182(a)(5)(A)(i); and second, they were immigrants without valid unexpired immigrant visas, see id. § 1182(a)(7)(A)(i)(I). The Estradas denied that they were excludable as charged, and they indicated that they sought the opportunity to apply for admission as lawful permanent residents, termination of the proceedings, asylum, withholding of deportation, suspension of deportation, and waivers of excludability under § 212(d)(3) and (k) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(d)(3), (k).

At a hearing on January 7, 1997, before a second IJ, the parties agreed to stipulate to the historical facts just described. The IJ noted that in addition to the question of excludability on the grounds charged, there was a question of whether the proceedings should be administratively closed pursuant to the ABC Agreement, as the Estradas had requested. The IJ reset the proceedings on the latter question, and on other issues not pertinent here, for a later date.

On February 4, 1997, an INS asylum office director sent a letter to Estrada. The letter stated:

> Information submitted to this office by INS Litigation Unit, Boston reflects that you attempted to enter the United States at Miami International Airport on October 1, 1995, without valid immigration documents.
> The Settlement Agreement in American Baptist Churches v. Thornburgh, 760 F. Supp. 796 (N.D. Cal. 1991) (ABC), provides that class members apprehended at the time of entry after December 19, 1990, shall not be eligible for its benefits. See Paragraph 2 of the Settlement Agreement. Based on the above

-6-

facts, it is determined that you are ineligible for benefits under the ABC Settlement Agreement.

That is, the INS' position was that while Estrada may have originally been within the ABC class, he was not "eligible for its benefits."

On March 4, 1997, Estrada brought an action in the District Court for Rhode Island. He sought a declaration that he was entitled to ABC benefits, and he sought an injunction against continuation of the regular exclusion proceedings until his rights under the agreement were honored.

On September 2, 1997, the IJ issued a written decision resolving several of the issues in the case. She held that exclusion proceedings were appropriate and that the Estradas were excludable as charged; in so holding, she rejected the Estradas' argument that, because they had already begun their journey to the United States when the visa petition was withdrawn, they had valid visas, they were entitled to enter the United States, and they were entitled to lawful permanent resident status. The IJ also held that the family was not entitled to administrative closure of the case before her under the ABC Agreement so that a special ABC Agreement hearing could be held.[4]

---

[4] The IJ also held that pursuant to § 244 of the INA, 8 U.S.C. § 1254 (1994) (repealed 1996), the Estradas were statutorily ineligible for suspension of deportation, a ruling she reiterated in later proceedings. Also in later proceedings, the IJ found that waivers of inadmissibility under INA § 212(d)(3) and (k) did not

The IJ held that the Estradas were properly in exclusion proceedings because "[o]nce the [INS] determined that the validity of [Estrada's] underlying labor certification was at issue, it had the right to deny [the Estradas] entrance to the United States and place [them] in exclusion proceedings." P&B did not withdraw the petition it had earlier filed on Estrada's behalf until after Estrada had already commenced his journey to the United States, and therefore, the IJ reasoned, the withdrawal did not serve to automatically revoke Estrada's employment-based visa. See 8 C.F.R. § 205.1(3). Nonetheless, the IJ found that the withdrawal by the employer was still "significant." The mere fact that there was no automatic revocation did not mean that the Estradas' visas were in fact valid and that the family was in fact entitled to seek lawful permanent resident status. The IJ noted that under former INA § 221(h), 8 U.S.C. § 1201(h) (1994), nothing in the Immigration and Nationality Act entitled an alien, even one who had an approved visa at the time he commenced his journey, to enter the United States, if upon arrival, he is found inadmissible.

The IJ sustained the two charges of excludability. First, the IJ analyzed the validity of Estrada's visa, taking into account the underlying visa petition and the employment

---

apply. The BIA affirmed the IJ's decisions on these points. In their petition for review of the BIA's decision, the Estradas do not discuss suspension of deportation or waivers of inadmissibility, so they have waived any argument they might have made as to these forms of relief.

relationship on which it depended. The IJ noted that the visa was based on an approved labor certification purportedly filed by P&B, and that as part of that process, Estrada submitted to the consulate a forged letter stating that he was a full-time employee of P&B. The IJ also noted that P&B's representative had, in fact, refused to write for Estrada a letter stating that Estrada was still employed by P&B, and had instead written a letter explaining that Estrada had been laid off on August 9, 1991, and the IJ found that "[i]f such a letter had been submitted in support of the labor certification and the employment-based visa, . . . neither would have been granted." The IJ concluded that P&B was unwilling to serve as petitioner on Estrada's behalf, that Estrada "was not entitled to the status accorded to him by the visa petition," and that "the labor certification was improvidently issued." The IJ held that "the visa issued to [the Estradas] was invalid and . . . [they are] excludable" as charged.

As for administrative closure under the ABC Agreement, the IJ noted that neither she nor the BIA had jurisdiction to review the INS' determination of an alien's eligibility for benefits under the ABC agreement. Here, the INS had already determined that the Estradas were not entitled to benefits under the agreement, as shown in the February 4, 1997 letter. In light of that determination, the IJ concluded that administrative closure was not appropriate. The IJ noted that, aside from the ABC

agreement, the Estradas could still pursue applications for asylum and withholding of deportation before the Immigration Court.

The IJ's September 2, 1997 decision concluded with two orders: (1) the charges of excludability were sustained, and (2) the motion to administratively close the proceedings was denied.

The exclusion proceedings resumed on September 25, 1997. During that proceeding, the IJ orally incorporated her September 2 written decision. She gave the Estradas until January 12, 1998 to either apply for asylum or advise the Immigration Court that they were not seeking such relief.

The final proceedings before the IJ occurred on January 22, 1998.[5] Counsel for the Estradas informed the IJ that the Estradas were not going to file applications for asylum because they felt that to do so "would be giving up procedural due process rights that they have to an administrative political asylum hearing as they are registered ABC class members." The IJ concluded the January 22 proceedings by issuing oral rulings resolving the remaining issues in the case: she incorporated her prior written decision of September 2 and her oral decision of September 25; she deemed the Estradas' applications for asylum and withholding of

_____

[5] On January 9, 1998, the Estradas requested a continuance, in part because the Rhode Island district court had not yet decided Estrada's case, and "should [it] decide [the issue of eligibility for benefits under the ABC Agreement] in favor of [Estrada] then Exclusion Proceedings should be administratively closed." The government opposed the continuance, and the IJ denied the continuance on January 14, 1998.

-10-

deportation abandoned; and she ordered the Estradas excluded as charged and deported.  That same day, the IJ's final oral decision was also embodied in written form.[6]

The Estradas appealed the IJ's orders to the BIA.  They argued that they were not excludable because the visa petition was withdrawn after they arrived in the United States, and the withdrawal was consequently not valid and did not work a revocation of the visa petition underlying their visas.  "[I]t follows [that the Estradas] have valid visa petitions and they should therefore be admitted as . . . lawful permanent residents."

The Estradas also argued that Estrada was a registered ABC class member who was entitled to administrative closure of the proceedings before the IJ in favor of the ABC Agreement special proceedings.  Citing Matter of Morales, 21 I. & N. Dec. 130, they argued that Estrada's departure from the country and his apprehension upon reentry did not divest him of his rights under the ABC Agreement.  They added that the asylum office's determination of Estrada's ineligibility for ABC benefits had been made without a hearing or other "due process safeguards."  The Estradas mentioned the ABC-related action they had brought in the federal district court, but they stated that that court had not yet

_____

[6] On January 22, 1998, the IJ issued for each petitioner a written order summarizing her final oral decision.  Each written order stated that the IJ's final oral decision was the official opinion in the case.

decided the matter. The Estradas' brief on appeal to the BIA was dated August 31, 1998.

The Estradas also argued that the IJ erred in deeming their applications for asylum and withholding of deportation abandoned, because being forced to apply for such relief in exclusion proceedings would have violated their rights under the ABC Agreement.

On September 16, 1999, during the pendency of the Estradas' appeal to the BIA, the district court decided the case Estrada had earlier filed. The government had moved to dismiss Estrada's claim for injunctive relief and moved for summary judgment on Estrada's claim for declaratory relief. The court granted the government's motion to dismiss with respect to Estrada's claim for injunctive relief, finding that 8 U.S.C. § 1252(g) had divested the court of jurisdiction to enjoin the exclusion proceeding. The government conceded the court had jurisdiction over the declaratory judgment part of the case. The court, however, noted that it had discretion whether to issue a declaratory judgment. The court declined to exercise its jurisdiction, noting that "adjudicating Estrada's claim for a declaratory judgment . . . would result in parallel litigation in which issues arising from a single dispute would be litigated in different fora, thereby resulting in duplication of effort and either piecemeal litigation or the possibility of inconsistent

-12-

results or both." The court denied the government's motion for summary judgment with respect to Estrada's claim for declaratory relief, and it gave Estrada twenty days to show cause as to why his claim for declaratory judgment should not be dismissed without prejudice. On October 14, 1999, the court dismissed Estrada's complaint without prejudice, stating that he had failed to show cause. Estrada had not filed anything in the district court after the September 16 order, nor did he file anything after October 14, 1999.

Nothing in the certified administrative record indicates that the Estradas ever brought the district court's decision to the attention of the BIA, even though their appeal was still pending before the BIA.

On April 15, 2003, the BIA dismissed the Estradas' appeal from the IJ's decision. The BIA agreed with the IJ on the appropriateness of exclusion proceedings and on excludability as charged, for essentially the same reasons as those cited by the IJ. The BIA stated that administrative closure under the ABC Agreement would not have been appropriate, because the INS had already made a determination that Estrada had no right to benefits under the agreement. The BIA did not mention Estrada's suit in the district court, which had been brought to the BIA's attention, or the district court's ultimate decision, which had not. Finally, the BIA noted that the IJ gave Estrada numerous opportunities to apply

for asylum and withholding, but he refused to apply, and held that the IJ did not err in determining that those applications were abandoned. This petition for review followed.

The issues are whether, in light of the standards of review, the BIA erred in refusing to allow administrative closure of the exclusion proceedings, whether it erred in determining that the Estradas were excludable as charged, and whether it erred in deeming the asylum applications abandoned. We deny the petition.

**II.**

A.    Standard of Review

A deferential standard of review applies in this case. "[A] decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law." 8 U.S.C. § 1252(b)(4)(C). Moreover, the BIA's "interpretations of the statutes and regulations it administers are accorded substantial deference"; where a statute is "silent or ambiguous," we uphold the BIA's interpretation, so long as it is "'reasonable' and consistent with the statute." Elien v. Ashcroft, 364 F.3d 392, 396-97 (1st Cir. 2004).

Finally, in a petition for review of a final order of removal, the "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). This standard of review as to factual questions is commonly known as the "substantial evidence

-14-

test," and substantial evidence exists where the decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Katebi v. Ashcroft, 396 F.3d 463, 466 (1st Cir. 2005) (internal quotation marks omitted) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).[7]

B.        Administrative Closure under the ABC Agreement

The Estradas' first challenge to the exclusion and deportation order is that the exclusion proceedings should not even have been allowed to continue: they say that they were eligible ABC class members entitled to administrative closure of their immigration proceedings, and that the proceedings should only have been reopened once it was determined at a "hearing conducted in accordance with the mandates of the ABC agreement" that they were not entitled to ABC benefits.

Under Paragraph 1 of the ABC Agreement, the settlement class includes only "all Salvadorans in the United States as of September 19, 1990," and "all Guatemalans in the United States as

---

[7] The REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 302-23, does not affect our analysis of the issues in this petition for review. At oral argument, the government agreed that in general, district courts can review the question of entitlement to benefits under the ABC Agreement, and that this was unchanged by the REAL ID Act. The government argues that in the particular context of this case, transfer of the ABC issue to the district court would be improper, because under 8 U.S.C. § 1252, as amended by the REAL ID Act of 2005, district courts lack jurisdiction over petitions for review. We do not reach this jurisdictional question, and the REAL ID Act does not affect any other issues in this case.

-15-

of October 1, 1990." Am. Baptist Churches, 760 F. Supp. at 799. Paragraph 2 states which class members are eligible for a "de novo, unappealable asylum adjudication before an Asylum Officer, including a new interview." Id. First, the class member must not have been convicted of an aggravated felony as defined in the INA. Id. Second, for Guatemalans, the class members must "indicate to the INS in writing their intent to apply for a de novo asylum adjudication before an Asylum Officer, or otherwise to receive the benefits of this agreement, within the period of time commencing July 1, 1991 and ending on December 31, 1991." Id. at 800. Finally, "[c]lass members apprehended at time of entry after the date of preliminary approval of this agreement shall not be eligible for the benefits hereunder." Id. The district court provisionally approved the agreement on December 19, 1990. Id. at 797.

Paragraph 17 of the Agreement states that "[t]he INS may only detain class members, eligible for relief under paragraph 2, who are otherwise subject to detention under current law and who: (1) have been convicted of a crime involving moral turpitude for which the sentence actually imposed exceeded a term of imprisonment in excess of six months; or (2) pose a national security risk; or (3) pose a threat to public safety." Id. at 804.

Paragraph 19 provides for administrative closure pending the new asylum adjudication. It states, in pertinent part:

-16-

> [A]ny class member whose deportation proceeding . . . was commenced after November 30, 1990 . . . may ask the Immigration Court or the BIA to administratively close his or her case and the case will be administratively closed unless the class member has been convicted of an aggravated felony or is subject to detention under paragraph 17.

Id. at 805. Under Paragraph 20, "[i]f the asylum application is finally denied under the procedures set forth in this agreement," a case pending before an IJ shall, upon notice from the INS, be recalendared. Id. at 806.

> Under Paragraph 35,

> [i]f an individual class member who has sought the benefits or rights of this agreement raises any claim regarding the denial of any such right or benefit (including a dispute over membership in the class) . . . , such individual is entitled to seek enforcement of the provisions hereof by initiating a separate proceeding in any federal district court, and the Defendants will not contest the jurisdiction of such court to hear any such claim . . . .

Id. at 809-10.

The crux of the Estradas' complaint is that they were not afforded a hearing before an asylum officer or otherwise given a chance to make their case for continued eligibility for benefits under the ABC Agreement. They say they were deprived of due process, because the INS reached the determination in its letter of February 4, 1997, without giving the family notice or an opportunity to present evidence. Because the INS' determination that Estrada was not entitled to ABC benefits was procedurally

-17-

unsound, it amounted, the Estradas say, to "nothing" -- essentially no determination at all -- and the IJ and BIA erred in refusing to allow administrative closure.

The Estradas stress that none of the Paragraph 17 disqualifiers apply. Their case for eligibility is that the "apprehended at time of entry after" December 19, 1990 provision does not apply to them: once Estrada registered and filed an asylum request which listed his children, they say, their "rights under the ABC agreement were vested." In the Estradas' view, once their rights vested, nothing in the ABC Agreement provides for the loss of their rights simply because Estrada departed and the family subsequently came to the United States.

The government responds that the INS determined that Estrada was ineligible for ABC benefits, that this determination was not reviewable by the IJ or by the BIA, see Matter of Morales, 21 I. & N. Dec. at 134-35, and that this court has no jurisdiction to consider any of the Estradas' ABC-related challenges.[8]

The government says the ABC Agreement "specifically provides for determination of [eligibility for ABC benefits] in a district court, not pursuant to a petition for review in a court of appeals." In the government's view, jurisdiction once existed in

_____

[8] The government argues in the alternative that if we have jurisdiction over the issue of the Estradas' eligibility for ABC benefits, we should find the Estradas ineligible, because they were "apprehended at time of entry" after the cut-off date.

-18-

the district court, but Estrada squandered his chance there by failing to respond to the show-cause order and/or to appeal the district court's decision.  The government also stresses that the Estradas never advised the BIA of the district court's decision, and that they never moved to reopen while the case was pending.  The government says that in the posture of this case -- a petition for review of the BIA's decision, and not an appeal from the district court -- this court lacks jurisdiction to consider the Estradas' eligibility for ABC benefits.

At oral argument, this court raised the possibility of transferring the present ABC issue to the District Court for the District of Rhode Island.  The government opposes such a transfer on two grounds.  First, it says, the petition for review of the BIA decision could not have been brought in the district court in the first instance, so transfer is improper under 28 U.S.C. § 1631, which states:

> Whenever a civil action is filed in a court . . . or an appeal, including a petition for review of administrative action, is noticed for or filed with . . . a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to <u>any other such court in which the action or appeal could have been brought at the time it was filed or noticed</u> . . . .

28 U.S.C. § 1631 (emphasis added).  The government's second argument is that it is not "in the interest of justice" to transfer this issue to the district court, because Estrada failed to respond

to the show-cause order, did not appeal the district court's decision, and did not even advise the BIA of the district court's decision. The Estradas counter that jurisdiction in the district court would be proper, and that transfer would be in the interest of justice; they say they "have raised and preserved the ABC issue throughout the course of the litigation."

We do not delve into the merits of the government's various jurisdictional challenges on the ABC issues. Instead, we rest on the ground that, on these facts, the petitioners have waived consideration of the ABC issue by this court or by the district court (even assuming a transfer).

Estrada never showed cause to the district court as to why his case based on a claim for ABC benefits should not be dismissed, and he never appealed the decision of the district court. The Estradas argued before the BIA that they were entitled to administrative closure under the ABC Agreement, noted that they had not received a hearing before an asylum officer on the matter, and alerted the BIA to the fact that Estrada had filed a case in the district court. But they never told the BIA how that case was decided or that the district court could have been viewed as deferring the ABC issue back to the agency. They had ample opportunity to do so.

The district court issued its memorandum and show-cause order on September 16, 1999, and it dismissed Estrada's complaint

for failure to show cause on October 14, 1999, but the BIA did not decide the Estradas' appeal from the IJ's decision until April 15, 2003. The BIA did not address the proper response to the district court's decision because it was not asked to. Cf. Xu v. Gonzales, 424 F.3d 45, 48-49 (1st Cir. 2005) (where point was not argued in appeal from IJ's decision, BIA was under no obligation to address point, and issue was waived and would not be considered by this court). Rather, the Estradas chose to cause delay, which benefitted them by keeping them in the United States. The dismissal of Estrada's action in the district court was more than six years ago. Estrada is not entitled to reopen it now. Taken together, the various omissions amount to waiver, and we will neither consider the ABC issue nor transfer it to the district court for further proceedings.

C.       Conventional Petition for Review Claims

        1.       Excludability as Charged

The Estradas' second line of attack goes to the IJ/BIA determination that they were in fact excludable as charged: they say that Estrada was not attempting a new entry and that the government did not properly revoke their immigrant visas before they commenced their journey to the United States. This presents the mixed standard of review: the factual determinations are reviewed under the substantial evidence test, see Ang v. Gonzales,

430 F.3d 50, 54-55 (1st Cir. 2005); the BIA's interpretations of law are reviewed with deference, see Elien, 364 F.3d at 396-97.

### a. New Entry

As to the "new entry" issue, the Estradas say that once Estrada was "accorded protected registered class status under the ABC agreement after his initial entry in 1985, he kept that status intact when entering the United States subsequent to the ABC agreement preliminary approval date of December 19, 1990." The Estradas say that in light of Estrada's status as a registered ABC class member, his "first and only entry" was in October 1985, his 1995 arrival should not have been deemed a new entry, and the children's status is the same. They say their situation involved merely an "innocent, casual, and brief" departure. Rosenberg v. Fleuti, 374 U.S. 449, 462 (1963). Whatever the merits of this argument, the government points out that it was not raised before the BIA. Although the Estradas clearly invoked the ABC Agreement before the BIA, they did so only as to administrative closure, and they did not articulate an "innocent, casual, and brief" argument before the BIA. The argument is therefore waived. See Chen v. Gonzales, 415 F.3d 151, 154 (1st Cir. 2005).

### b. Timing of Withdrawal of Visa Petition

The Estradas also argue that because their visas were not revoked prior to the commencement of their journey to the United States, they should have been allowed entry, and the BIA erred in

-22-

holding them excludable as charged.[9]  They say that once the government discovered that the letter presented to the consulate was a forgery, the appropriate response was to put the family in deportation proceedings; they also say this would have made them eligible for relief that was not available in exclusion proceedings.

        i.        <u>Appropriateness of Exclusion Proceedings</u>

The Estradas base their argument on former INA § 205, which, before the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, Div. C, 110 Stat. 3009, 3009-546 (1996), provided that revocation of the approval of any visa petition will not have effect unless there is notice prior to the petition beneficiary's commencement of travel to the United States.  <u>See</u> 8 U.S.C. § 1155 (1994).  Their argument is that the fact that withdrawal of the visa petition occurred after their journey had commenced (and indeed, not until well after they had been paroled into the United States) means that the withdrawal was not valid and did not result in revocation of the

_____

[9] The Estradas' argument on excludability is based on the statutory scheme in effect before the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, Div. C, 110 Stat. 3009, 3009-546 (1996).  We use the pre-IIRIRA versions of the statutes.  <u>See</u> <u>id.</u> § 309(c)(1), 110 Stat. at 3009-625, <u>amended by</u> Act of Oct. 11, 1997, § 2, Pub. L. No. 104-302, 110 Stat. 3656, 3657; <u>Goncalves</u> v. <u>Reno</u>, 144 F.3d 110, 116 (1st Cir. 1998).

approval of their visa petition, and that they should have been put into deportation proceedings.

The Estradas' conclusion is contrary to the BIA's reasonable interpretation of the statutory text.[10]  The last sentence of § 1155 then provided that "[i]f notice of revocation is not so given, and the beneficiary applies for admission to the United States, his admissibility shall be determined in the manner provided for by sections 1225 and 1226 of this title."  Id.  The pre-IIRIRA versions of §§ 1225 and 1226 dealt with exclusion, not deportation, procedures.  See 8 U.S.C. §§ 1225, 1226 (1994).  It was reasonable for the BIA to conclude that the only consequence of failure to notify before travel was that the right to admission would be adjudicated in exclusion proceedings.

Furthermore, INA § 221(h) provided at the time that "[n]othing in this chapter shall be construed to entitle any alien, to whom a visa or other documentation has been issued, to enter the United States, if, upon arrival . . . he is found to be inadmissible."  8 U.S.C. § 1201(h) (1994).  The IJ found that this

_____

[10] Both the BIA and the IJ cited the BIA's decision in Matter of Alarcon, 17 I. &. N. Dec. 574 (BIA 1980).  In that case, an alien was held to be excludable at entry where she entered the United States with an immigrant visa "accorded to her as the unmarried daughter of a lawful permanent resident," although in fact she had been married before she entered the United States. Id. at 575.  The BIA, interpreting § 1155, dismissed her appeal. The BIA stated that "if revocation was not effective and the beneficiary applies for admission, his admissibility is to be determined in exclusion proceedings," id. at 576, and that "excludability was appropriately charged," id. at 577.

is what happened here, and quoted this exact language. The BIA agreed with the IJ. We see no reason for overturning the BIA's decision that exclusion proceedings were proper.

### ii.    Grounds of Excludability

The BIA's ultimate determination that the Estradas were excludable was, far from being "manifestly contrary to law," based on reasonable statutory interpretations and ample factual support. The charged grounds of excludability were 8 U.S.C. § 1182(a)(5)(A)(i)[11] and (a)(7)(A)(i)(I).[12] The BIA reasonably interpreted § 1155 and concluded that nothing about the timing of P&B's withdrawal of the petition rendered the Estradas' labor certifications or immigrant visas automatically valid. The BIA cited its decision in Matter of Alarcon, 17 I. &. N. Dec. 574, which rejected the argument that "since [the alien] was not notified that her visa petition was revoked before she came to this country, her visa petition and, therefore, her visa were still valid." Id. at 575. Instead, the BIA said, the IJ should

---

[11] This section then provided that "[a]ny alien who seeks to enter the United States for the purpose of performing skilled or unskilled labor is excludable," absent a labor certification. 8 U.S.C. § 1182(a)(5)(A)(i) (1994).

[12] This section then provided that, "[e]xcept as otherwise specifically provided in this chapter," an immigrant who at the time of application for admission "is not in possession of a valid unexpired immigrant visa . . . or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required [under certain regulations]," is excludable. 8 U.S.C. § 1182(a)(7)(A)(i)(I) (1994).

"examine[] the applicant's visa to determine its validity," reaching a decision "inherently involv[ing] scrutiny of the underlying visa petition and the relationship on which it depends." Id. at 576. "If [the IJ] determines that a flaw exists in that relationship such that the alien was not actually entitled to the status which was accorded to him by the visa petition, the [IJ] may conclude that the visa is invalid." Id. This can hardly be said to be an unreasonable interpretation of the immigration statutes.

The Estradas fare no better with respect to the BIA's factual findings and application of law to facts. The BIA agreed with the IJ that the visas, visa petition, and labor certification were based on fraudulent information and were invalid. Estrada conceded that he forged the letter from P&B stating that he was employed, and the IJ found that if the true information about Estrada's employment situation had been submitted to the consulate, neither the labor certification nor the employment-based visas would have issued. We are hardly "compelled to conclude to the contrary" on this record, and we see no basis for saying that the decision that the Estradas were ineligible for admission to the United States was "manifestly contrary to law." The Estradas' theory implies that one whose fraud goes undetected for a short while is entitled, simply because the INS did not detect the matter right away, to enter the United States and stay here indefinitely

with an unrevokable visa, whatever its actual invalidity.  We reject this theory.

2.    Denial of Various Forms of Relief

Finally, the Estradas say that they did not voluntarily waive their right to apply for "non-ABC" asylum, and they seek leave to apply for this relief now.  They say there is a difference between a "defensive" asylum claim raised before an IJ and an ABC asylum claim, and that if had they filed claims for defensive asylum before the IJ, they "would have certainly acquiesced in the IJ's ruling" on administrative closure and would have been waiving their ABC claim.  We see no basis for the argument.

Whether or not "defensive" asylum is different from ABC asylum, the INS had determined that Estrada was ineligible for benefits under the ABC Agreement, and the IJ had decided that administrative closure was improper, in deference to the INS' determination.  The Estradas were required to seek from the IJ whatever relief they hoped to get.  Indeed, they did seek suspension of deportation and waivers of inadmissibility.  Those forms of relief are clearly different from what the Estradas call "ABC asylum," and it is not clear how seeking "defensive asylum," which the Estradas say is also different, would have been any more of a waiver of their rights under the ABC Agreement.  As the Estradas concede, they were provided numerous opportunities to continue to apply for asylum after they indicated at the

commencement of their exclusion proceedings that they would be seeking such relief, and they refused to do so.[13]  It was not error for the BIA to deem the applications for asylum abandoned.[14]

### III.

The petition for review is <u>denied</u>.

---

[13] By expressly telling the IJ that he would not be pursuing an asylum application, Estrada also effectively withdrew the application for asylum he had filed in 1992.

[14] In the September 25, 1997 proceeding before the IJ, counsel for the petitioners also expressed hesitation in filing an asylum application in light of the penalties for frivolous applications.
The Estradas make no argument in their petition for review as to withholding of removal, so any such argument is waived, and in any case fails for the abandonment reason discussed above.  As already stated, the Estradas have also waived any argument they might have had as to suspension of deportation and waivers of inadmissibility.