# United States Court of Appeals
## For the First Circuit

No. 05-2791

NESTORAS BOLLANOS,

Petitioner,

v.

ALBERTO GONZALES,
Attorney General of the United States,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Selya, Lynch, and Lipez,
Circuit Judges.

Ilana Etkin Greenstein, Jeremiah Friedman, Maureen O'Sullivan, Harvey Kaplan and Kaplan, O'Sullivan & Friedman, LLP on brief for petitioner.
Eric D. Miller, Attorney, Appellate Staff, Civil Division, Peter D. Keisler, Assistant Attorney General, and Scott R. McIntosh, Attorney, Appellate Staff, Civil Division, on brief for respondent.

August 31, 2006

**LYNCH**, **Circuit Judge**.  Petitioner Nestoras Bollanos, a native and citizen of Albania, petitions for review of a final order of removal of the Board of Immigration Appeals (BIA), which denied his petitions for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  An Immigration Judge (IJ) found that Bollanos had not previously been persecuted on the basis of a protected ground, and that he had not met his burden of establishing a well-founded fear of future persecution.  The BIA dismissed Bollanos's appeal, holding that even if Bollanos had proven past persecution, circumstances in Albania have changed fundamentally such that he no longer has a well-founded fear of persecution there.  We affirm the BIA and deny the petition.

I.

On or about November 25, 2002, Bollanos entered the United States from Canada using a stolen and altered passport.  On January 31, 2003, Bollanos was served with a Notice to Appear in removal proceedings before an IJ.  Bollanos conceded removability, and on March 3, 2004, he filed an application requesting political asylum and withholding of removal on the basis of his religion, nationality, and political opinion, as well as protection under the CAT.

In support of his application, Bollanos offered evidence that he had suffered persecution in Albania and Greece on account

-2-

of his religion, nationality, and political opinion. Bollanos, an ethnic Greek, was born in Albania. Under Albania's communist regime, he and his family suffered ethnic and religious discrimination. After the fall of communism in the early 1990s, Bollanos moved with his family to Greece. While in Greece, he became interested in politics and joined Omonia, a group organized to advocate for the rights of ethnic Greeks in Albania. Over the next several years, Bollanos traveled back and forth between Greece and Albania with some frequency. Ethnic Greeks living in Albania continued to suffer discrimination under the new government, and Bollanos returned to Albania in part to ensure that his family's land was not seized by the government or northern Albanians during the family's absence. Bollanos last returned to Albania in 2002 for his grandfather's funeral.

While in Albania, Bollanos suffered mistreatment at the hands of the police on three occasions. He was arrested in 1994, 1998, and 2000 because of his support for the rights of ethnic Greeks. Each time, he was beaten while in custody, and on the first and third occasions, he was treated so severely that he required medical attention after his release.

Bollanos also claims to have experienced persecution in Greece. Around 1999, he began dating an Albanian Muslim woman who was vacationing in Greece. At some point thereafter, the woman's father and brothers threatened Bollanos and demanded that he marry

the woman.  Bollanos then stopped dating the woman.  Around the same time, Bollanos's mother apparently received a note from the woman's family threatening to kill him.  The woman now lives in Albania.  Bollanos and his family have had no further problems with the woman's family.

In an oral decision issued on June 9, 2004, the IJ denied Bollanos's application for asylum.  Although the IJ found Bollanos to be credible, she found that he had "failed to establish . . . a well-founded fear of persecution in either Albania or Greece."[1]  The IJ found that although Bollanos had suffered discrimination "throughout his life, both in Albania and Greece [for] a variety of reasons," that treatment did not amount to persecution.  Having denied his application for asylum, the IJ also denied Bollanos's application for withholding of removal.  Finally, the IJ denied Bollanos's CAT application, stating that the police mistreatment to which Bollanos testified "[did] not appear to constitute torture."

On October 31, 2005, the BIA affirmed the IJ's ruling, finding that "even if [Bollanos] had established past persecution, the preponderance of the evidence demonstrates that there has been

---

[1]  Bollanos argues in his brief that the IJ found he had suffered past persecution.  Although the transcript of the IJ's oral opinion contains the statement "I do believe that it is established that [the] treatment [suffered by Bollanos] constitutes persecution," it is clear from context that a transcription error omitted a "not" from the sentence.  Indeed, in the very next paragraph, the IJ states: "Again, I find that the harm inflicted on the respondent does constitute discrimination . . . .  But that does not amount to persecution."

a 'fundamental change in circumstances [in Albania] such that the applicant no longer has a well-founded fear of persecution.'" (quoting 8 C.F.R. § 1208.13(b)(1)(i)(A), (1)(ii)). The BIA noted evidence in the record indicating that Albania "has undergone major reforms," particularly with respect to safe-guarding the rights of minorities, conducting peaceful elections, and reducing religious intolerance. In addition, the BIA found that Bollanos was not entitled to protection under the CAT.

II.

Bollanos makes several claims on appeal. First, he claims that the BIA erred in determining that circumstances in Albania had changed so as to preclude a reasonable fear of persecution. Second, Bollanos argues that the BIA violated his right to due process of law when it failed to determine whether he was eligible for humanitarian asylum. Third, Bollanos asserts that the BIA erred in not awarding him relief under the CAT. Finally, Bollanos argues that the BIA erred and violated his due process rights in upholding the IJ's order of removal to Greece.

To be eligible for asylum, an alien must demonstrate that he is a "refugee." 8 U.S.C. § 1158(b)(1)(A). To do so, the alien must show that he fears persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42)(A); see also Mukamusoni v. Ashcroft, 390 F.3d 110, 119 (1st Cir. 2004). The alien bears the burden of

proof for establishing his eligibility for asylum. 8 U.S.C. § 1158(b)(1)(B)(i). Once an applicant has established that he has suffered persecution in the past, he is "presumed to have a well-founded fear of persecution on the basis of the original claim." 8 C.F.R. § 208.13(b)(1); see also El Moraghy v. Ashcroft, 331 F.3d 195, 203 (1st Cir. 2003); Fergiste v. INS, 138 F.3d 14, 18 (1st Cir. 1998). However, the alien will nonetheless be ineligible for asylum if "[t]here has been a fundamental change in circumstances such that [he] no longer has a well-founded fear of persecution in [his] country." 8 C.F.R. § 208.13(b)(1)(i)(A); see also El Moraghy, 331 F.3d at 203.

Generalized evidence is not sufficient to demonstrate a change in circumstances when "there is a specific danger to the applicant." Gailius v. INS, 147 F.3d 34, 36 (1st Cir. 1998). "[C]hanges in country conditions must be shown to have negated the particular applicant's well-founded fear of persecution." Fergiste, 138 F.3d at 19. Whether circumstances have fundamentally changed is a factual question that we review under the deferential substantial evidence standard. See Estrada-Canales v. Gonzales, 437 F.3d 208, 215 (1st Cir. 2006). Thus, we must accept the agency's determinations "unless any reasonable adjudicator would be compelled to conclude to the contrary." Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005) (quoting 8 U.S.C. § 1252(b)(4)(B)) (internal quotation marks omitted).

Here, substantial evidence supports the BIA's determination that circumstances in Albania have changed fundamentally such that Bollanos can have no well-founded fear of persecution there. During Bollanos's removal hearing, the government introduced into evidence the State Department's 2003 Country Report on Human Rights Practices for Albania and its 2004 Profile of Asylum Claims and Country Conditions for Albania. Both reports indicate that since 2000 -- the last time Bollanos claims to have suffered persecution in Albania -- treatment of those advancing the rights of ethnic minorities has improved substantially.[2] Specifically, politically-motivated violence has decreased significantly. Elections in October 2003 "were conducted under a new electoral code, which addressed many of the concerns that arose from the 2001 parliamentary elections." The elections were "generally free of violence and considered the most transparent in Albania's short democratic history, with no police interference." Although there were some "small-scale clashes

---

[2] Despite having checked the box for religious persecution on his application for asylum and presenting evidence of religious discrimination to the IJ and BIA, Bollanos claims in his brief that he has "never claimed that he ha[s] been persecuted in the past on account of his religion." To the extent he does make such a claim, substantial evidence supports a determination of changed circumstances. In particular, the 2003 Country Report states that "[t]he Constitution provides for freedom of religion[,] and the Government generally respected this right in practice. . . . Relations among the various religious groups were generally amicable." Likewise, the 2004 Asylum Claims Profile notes that Albania is "recognized for its religious tolerance," and "all religious groups freely practice their faith[s]."

between individual competing party supporters" in Himara, Bollanos's hometown, the candidate representing the Greek minority -- Bollanos's cousin -- won. In addition, in 2004 ethnic Greeks held five parliamentary seats and two ministerial positions and "participated actively in various political parties." Despite Bollanos's contention to the contrary, this is not generalized evidence, but rather evidence that bears directly on the reasonableness of his fear of persecution.

Bollanos argues that the BIA neglected to consider evidence that conditions in Albania remain dire. Yet, the majority of the evidence that Bollanos presented to the IJ concerns conditions only up to 2001. Moreover, even those reports introduced by Bollanos that describe conditions since 2001 could support a finding of changed circumstances. For example, one report notes remedial measures being taken by the government to reduce police misconduct. Another recounts efforts by police to decrease tensions between ethnic Greeks and other Albanians. Finally, much of the evidence to which Bollanos points -- while indicative of problems in Albania, to be sure -- does not support a reasonable fear of persecution on a protected ground. For example, a high incidence of police misconduct, if not directed at a protected class of people, does not prove eligibility for asylum.

The BIA did not err in denying Bollanos's claim for asylum. Because Bollanos's asylum claim fails, his application for

withholding of removal necessarily fails as well. See Mediouni v. INS, 314 F.3d 24, 27 (1st Cir. 2002).

Likewise, the BIA's determination that Bollanos was not entitled to CAT relief is supported by substantial evidence.

In his brief, Bollanos claims that the BIA violated his due process rights by failing to award him relief based on humanitarian asylum, a discretionary doctrine sometimes available even in the absence of a threat of future persecution. See Waweru v. Gonzales, 437 F.3d 199, 205 (1st Cir. 2006) ("[T]his is granted only in cases of 'extraordinary suffering . . . .'"); see also 8 C.F.R. § 208.13(b)(1)(iii)(A); Matter of Chen, 20 I. & N. Dec. 16, 19-21 (BIA 1989). This due process claim is frivolous.[3]

Bollanos argues for the first time on appeal that the IJ erred in directing his deportation to Greece after it found that he had not been firmly resettled there. Because Bollanos failed to raise this claim before the BIA, we lack jurisdiction over it now. See Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004). In any event, the IJ did not err in directing Bollanos's removal to Greece.

The petition for review is denied.

---

[3] Bollanos's claim that the BIA violated his due process rights by upholding the BIA's order of removal to Greece also lacks any merit.