**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 06-1329

SELIM RROSHI,

Petitioner,

v.

ALBERTO R. GONZALES, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

Saher J. Macarius and Audrey Botros on brief for petitioner.
Peter D. Keisler, Assistant Attorney General, Civil Division,
Greg Mack, Senior Litigation Counsel, Office of Immigration
Litigation, and Daniel R. Dertke, Environmental Defense Section,
Environmental and Natural Resources Division, U.S. Department of
Justice, on brief for respondent.

April 4, 2007

**STAHL**, **Senior Circuit Judge**.  Petitioner Selim Rroshi petitions for review of the Board of Immigration Appeals's (BIA) affirmance of an immigration judge's (IJ) denial of his application for asylum.[1]  We find that Rroshi's petition is precluded by Tota v. Gonzales, 457 F.3d 161 (1st Cir. 2006), and we therefore affirm.

Rroshi is a native and citizen of Albania who arrived in the United States on March 3, 2002, on a false passport.  The Immigration and Naturalization Service (INS)[2] issued a Notice to Appear, and at a hearing on September 11, 2002, Rroshi conceded removability, but applied for relief based on his experiences in Albania.  The IJ denied relief, and the Board of Immigration Appeals (BIA) affirmed and adopted the IJ's decision.

Rroshi was born in 1966 in Durres, Albania, into a family of "Kulaks,"[3] who were considered opponents of the Communist regime then in power.  Some of Rroshi's family members spent time in prison, presumably for political reasons.  Rroshi became involved with the Democratic Party in 1990, and participated in party

---

[1] Rroshi was also denied withholding of removal and protection under the Convention Against Torture, but does not appeal those denials here.

[2] The Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (codified as amended at 6 U.S.C. § 291(a)), abolished the INS and transferred its duties to the Department of Homeland Security.  See Lattab v. Ashcroft, 384 F.3d 8, 13 n.2 (1st Cir. 2004).

[3] "Kulak" seems to be a generic term for landowners and others with wealth who were disfavored during the Communist regime.

rallies and organizing activities.  In 1991, Rroshi was shot in the leg on his way home from a demonstration.  He believes that he was targeted by the Communist Party because of his Democratic Party activities.

The Democratic Party took power in 1992, and Rroshi continued to be active in the party.  The Socialist Party, apparently made up largely of former Communist Party members, returned to power in 1997.  In the period leading up to that election, Rroshi again became the subject of physical attacks.

On June 22, 1997, Rroshi visited the village of Rreth to campaign for the Democratic Party.  There, he spoke to a group of about 40 or 50 people in the town center and advocated, among other things, that the Socialist Party should be outlawed.  Socialist Party members hit and swore at Rroshi and his companions as they left town that evening.

When Rroshi and his companions returned to Durres, they parked near the Democratic Party office and went for a walk on the town's promenade.  As they walked, a car pulled up in front of them and three men got out and began to beat Rroshi and his companions. The men forced Rroshi and the others into their car, blindfolded them, and took them to a house 45 minutes away, where the beatings continued and the captors told them to leave the Democratic Party. They were held captive in the house for two weeks, until the

election had passed. When Rroshi was released, his captors told him that if they caught him again, they would kill him.

After the election, Democratic Party members continued to be harassed and threatened. Socialist Party members entered Rroshi's house and mistreated his mother and brother. Rroshi was also arrested on two occasions and held without charge or explanation for several hours.

In January 2002, Rroshi was at a bar in Durres, when a person in a military-looking uniform approached him and left a bullet on his table, and warned him that he would have the same fate as his friends, presumably referring to Democratic Party members who had been killed. Two days after that, Rroshi went to Tirane, where he procured a false passport. He then left the country through Italy, traveled to Spain, and then to the United States, entering in Chicago. Upon entry, he disclosed to a customs official that his passport was false and that he was seeking asylum.

In order to qualify for asylum, Rroshi must show that he is a "refugee." 8 U.S.C. § 1158(b)(1)(A), (B)(i); 8 C.F.R. § 208.13(a). A "refugee" is a person outside his or her home country who is "unable or unwilling to return . . . because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). If a person can show past

persecution, this creates a presumption that the person has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). However, this presumption can be rebutted by a preponderance of evidence that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution." 8 C.F.R. § 208.13(b)(1)(i)(A).

The IJ found Rroshi credible, and agreed that he had suffered past persecution. This shifted the burden to the government to show that, despite this past persecution, Rroshi did not have a well-founded fear of future persecution. The government presented evidence of changed circumstances in Albania, primarily through the U.S. State Department's 2004 report, <u>Albania: Profile of Asylum Claims and Country Conditions</u> ("Country Conditions Report"). The report noted that there had been no major outbreaks of political violence since 1998, that neither party any longer engaged in policies of abuse or coercion against political opponents, and that many former opposition members had returned to the country without reprisal.

Relying on the Country Conditions Report, the IJ held that changed circumstances were such that Rroshi did not have a well-founded fear of future persecution. The BIA affirmed in a short opinion adopting the decision of the IJ.

We review the decision of the BIA directly, but "[w]here the BIA deferred to or adopted the IJ's reasons for denying [the

petitioner's] claims, we review those portions of the IJ's decision as part of the final decision of the BIA." Hernandez-Barrera v. Ashcroft, 373 F.3d 9, 20 (1st Cir. 2004). We review the IJ's factual findings under the deferential "substantial evidence" standard. Dhima v. Gonzales, 416 F.3d 92, 95 (1st Cir. 2005). The IJ's determination must stand "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). This same standard applies to an IJ's finding of changed circumstances, where such a finding is based on factual determinations, as this one was. Tota, 457 F.3d at 165 n.8; Mehilli v. Gonzales, 433 F.3d 86, 93 (1st Cir. 2005).

While the State Department's Country Conditions Reports are not binding, Gailius v. INS, 147 F.3d 34, 45 (1st Cir. 1998), they are "generally probative of country conditions" and "may be sufficient . . . to rebut the presumption of future persecution," Palma-Mazariegos v. Gonzales, 428 F.3d 30, 36 (1st Cir. 2005). In the case of Albania, we have recently addressed the applicability of the Country Conditions Report under circumstances remarkably similar to those here. See Tota, 457 F.3d at 162-65; see also Alibeaj v. Gonzales, 469, F.3d 188, 192-93 (1st Cir. 2006); Bollanos v. Gonzales, 461 F.3d 82, 86 (1st Cir. 2006). The petitioner in Tota, Gen Tota, also worked for the Democratic Party during the same period, and was beaten and accosted by Socialist Party members (although he was not kidnapped as Rroshi was).

-6-

Following the Socialists' return to power in 1997, he was frequently arrested and held without charge, once for 20 hours. Tota ultimately left Albania in 2000 and sought asylum in the United States.

As in this case, the IJ found Tota credible as to past persecution, but found that the Country Conditions Report provided sufficient evidence to rebut the presumption of future persecution. On appeal, Tota challenged the IJ's reliance on the Country Conditions Report, but we held that "substantial evidence culled from the [Country Conditions Report], specifically tailored to the discussion of political persecution of [Democratic Party] members by the Socialist government, supports the IJ's finding that the government met its burden of rebutting Tota's presumptive well-founded fear of persecution." Tota, 457 F.3d at 168. Only a short period of time has passed since our decision in Tota, and there has been no evidence presented that the situation has worsened in Albania in that period. Therefore, we follow our decision in Tota and deny the petition for review.

**The petition for review is denied**.