Not for Publication in West's Federal Reporter

# United States Court of Appeals

## For the First Circuit

No. 07-1328

ANILDA GJIKNURI, ET AL.

Petitioners,

v.

ATTORNEY GENERAL MICHAEL B. MUKASEY[*],

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Oberdorfer,[**] Senior District Judge.

Ilana Greenstein, Maureen O'Sullivan, Jeremiah Friedman, Harvey Kaplan, and Kaplan, O'Sullivan & Friedman, LLP on brief for petitioner.
Terri J. Scadron, Attorney, Office of Immigration Litigation, Michael B. Mukasey, Attorney General, and Quynh Bain, Senior Litigation Counsel on brief for respondent.

January 15, 2008

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Michael B. Mukasey has been substituted for former Attorney General Alberto R. Gonzales as the respondent herein.

[**]Of the District of Columbia, sitting by designation.

**OBERDORFER**, **Senior District Judge**. Anilda and Vangel Gjiknuri,[1] citizens of Albania, petition for review of the Board of Immigration Appeals' (BIA) affirmance of an Immigration Judge's (IJ's) denial of their applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). The Gjiknuris' petition is foreclosed by Circuit precedent: Tota v. Gonzales, 457 F.3d 161 (1st Cir. 2006), and Alibeaj v. Gonzales, 469 F.3d 188 (1st Cir. 2006); both uphold BIA determinations based on country condition reports that persons of petitioners' political persuasion are not subject to persecution in Albania. We therefore affirm.

Anilda and Vangel Gjiknuri came to the United States in July 2001. In March 2002, the Immigration and Naturalization Service issued Notices to Appear charging them with being removable. They conceded removability and applied for relief based on their alleged political persecution in Albania. The IJ disbelieved the Gjiknuris' story and denied relief. The BIA, in effect, assumed without deciding that the petitioners had suffered persecution. However, relying on the State Department's 2004 country report, *Albania: Profile of Asylum Claims and Country Conditions* (the "Report"), the BIA concluded that persons of petitioners' political persuasion are no longer subject to

_____

[1]The Gjiknuris' application for asylum renders their minor children Mirjan and Julia derivative applicants.

-2-

persecution in Albania and, on that ground, affirmed the IJ's denial of their asylum claim.

According to the Gjiknuris, in December 1990, they joined the Democratic Party of Albania. In February 1992, an Albanian police officer struck Anilda on the face with the butt of his gun while she participated in a demonstration against the Socialist Party government. Four days later, the Gjiknuris' apartment was bombed. Because they feared they had been targeted for abuse by the Socialist Party, they fled to Greece. They spent the next nine years there, except for a few brief periods following expulsions from Greece to Albania.

They also claimed that while Vangel was briefly in Albania in October 1998, three armed men, including a man known to him to be a member of the Socialist Party, accosted him and told him to leave Albania within twenty-four hours. They further claim that, during another such period in June 2001, they participated in a Democratic Party demonstration in Albania; several days later, five men arrested them and told them to stop their political activities, referring to the 1992 bombing incident and warning that "the same thing could happen again." They detained Vangel for two days, during which they beat, threatened, and insulted him.

Following this last incident, the Gjiknuris fled back to Greece and decided to leave Greece permanently. Vangel and their two children entered the United States after obtaining tourist

-3-

visas at the American embassy in Athens, Greece. Anilda used a false passport to enter Canada; from there she sneaked across the border into the United States. Reunited, they filed the pending application.

After an evidentiary hearing, an IJ held that the Gjiknuris failed to carry their burden of proving a well-founded fear of persecution in the event of their removal to Albania. The IJ found that there was insufficient evidence connecting the bombing to the Gjiknuris' political opinions. He found the Gjiknuris' accounts of the other incidents of alleged persecution incredible.

The BIA denied their appeal, holding that even if they had proven past persecution, circumstances in Albania have changed fundamentally such that they no longer have a well-founded fear of persecution there. The BIA relied heavily upon the Report that, in part, noted that: (1) Albanian citizens exercise their right to change the government peacefully through periodic elections; (2) the Democratic Party participates in the political system and holds seats in Parliament; (3) officials have not arbitrarily withheld permits for gatherings in public places; and (4) there were a few instances of police maltreatment of political protestors, but no confirmed cases of politically-motivated detention or reports of political prisoners. The BIA took administrative notice that the

-4-

incumbent Prime Minister of Albania is a member of the Democratic Party.

On their appeal here, the Gjiknuris contend that the BIA violated their right to due process by failing to "address any issue which had been raised at trial" and by basing the entirety of its decision on the changed political circumstances in Albania noted by the State Department, a fact "neither raised nor adjudicated below." Petitioners' Opening Brief at 23. This contention is without merit because the Gjiknuris had the opportunity to move to have the BIA reconsider or reopen proceedings after the BIA affirmed the IJ's decision. See 8 C.F.R. § 1003.2 (setting forth the procedures for making and adjudicating motions to reopen and reconsider Board decisions). Nothing in the record indicates that the Gjiknuris made such a motion.

Because the Gjiknuris had the opportunity to be heard, they received all the process they are due. In Gebremichael v. INS, we held that "the motion to reopen process can ordinarily satisfy the demands of due process" when the BIA takes official notice of extra-record facts concerning a change in government. 10 F.3d 28, 38 (1st Cir. 1993); see also Bollanos v. Gonzales, 461 F.3d 82 (1st Cir. 2006) (affirming a BIA holding that conditions in Albania had fundamentally changed where the IJ had not addressed that issue).

Looking beyond the due process technicality, we are satisfied with the merits of the IJ/BIA denial of petitioners' asylum claim. In order to qualify for asylum, the Gjiknuris must show that they are outside their home country and "unable or unwilling to return . . . because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A), 1158(b)(1)(A), (B)(i); 8 C.F.R. § 208.13(a). Proof of past persecution creates a presumption that the persecutee has such a well-founded fear. 8 C.F.R. § 208.13(b)(1). However, this presumption can be rebutted by a preponderance of evidence that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution." 8 C.F.R. § 208.13(b)(1)(i)(A).

"Whether circumstances have fundamentally changed is a factual question that we review under the deferential substantial evidence standard." Bollanos, 461 F.3d at 85. "Thus, we must accept the agency's determinations 'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. (quoting 8 U.S.C. § 1252(b)(4)(B)).

"State Department reports are generally probative of country conditions." Palma-Mazariegos v. Gonzales, 428 F.3d 30, 36 (1st Cir. 2005). Although "abstract evidence of generalized changes in country conditions, without more, cannot rebut a

presumption of a well-founded fear of future persecution," a State Department Country Conditions Report "may be sufficient, *in and of itself*," if it "convincingly demonstrates material changes in country conditions that affect the specific circumstances of an asylum seeker's claim." Id. at 35-36 (emphasis added).

We have recently upheld several agency determinations that fundamental changes to conditions in Albania rebutted the presumption of a well-founded fear of future persecution arising from allegations of past persecution based on support for the Democratic Party. See, e.g., Alibeaj, 469 F.3d at 192-93,(affirming an agency finding that conditions in Albania have fundamentally changed as evidenced by the State Department's 2003 report, *Albania: Profile of Asylum Claims and Country Conditions*); Tota, 457 F.3d at 167 (holding that a State Department report was sufficient "in and of itself" to rebut the petitioner's presumptive well-founded fear of future persecution in Albania based on the petitioner's membership in the Democratic Party).

Petitioner has presented us with no reason to deviate from our holdings in Tota and Alibeaj. Because the Gjiknuris' asylum claim fails, their application for withholding of removal necessarily fails as well. See Mediouni v. INS, 314 F.3d 24, 27 (1st Cir. 2002).

The Gjiknuris contend that we should reverse the BIA's dismissal of their claim for relief under the CAT because the BIA

did not explain its conclusion. Although the BIA did not explicitly connect its analysis of fundamentally changed conditions to whether the Gjiknuris will more likely than not face torture if returned to Albania, its analysis applies equally to the likelihood of future torture as it does to future persecution.

Accordingly, we deny the petition for review.